STENSON (MIRIAM L.), Plaintiff and Respondent, vs. SCHUMACHER and another, Defendants and Respondents: STENSON (WILLIAM), Defendant and Appellant.

*January 16—February 16, 1940.*

For the appellant there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *Ray C. Dempsey.*

For the respondents Hans Schumacher and Farmers Mutual Automobile Insurance Company there was a brief by *Hanson, Weinke, O'Neill & Tonjes* of Fond du Lac, and oral argument by *Russell E. Hanson* and *John Tonjes.*

MARTIN, J. On the day in question, plaintiff and her husband, accompanied by plaintiff's brother, were on a trip from their home in Chicago to Trout lake in the vicinity of Woodruff, Wisconsin. Mr. Stenson was driving a 1937 Ford sedan. They left Chicago about 7 o'clock (standard time). The accident occurred at about 11:15 a. m. As the Stenson car proceeded northerly on United States Highway No. 41, it came up behind the Scheller truck which was proceeding in the same direction upon said highway. The Schumacher truck was also proceeding in a northerly direction at a distance of about one hundred feet ahead of the Scheller truck. Both trucks were engaged in hauling milk. The overall length of each truck was approximately twenty feet with a closed type cab, and the box or body of each was about five feet high and seven and one-half feet wide. Each truck was equipped with a rear-view mirror on an arm that projected from the side of the truck in front of the left door. The concrete pavement was sixteen feet in width. Both trucks were traveling at a speed of from twenty-five to thirty-five miles per hour.

When the Stenson car got within one hundred fifty feet of the Scheller truck, it followed said truck, maintaining approximately the same distance to the rear for four hundred to five hundred feet, and then turned into the west lane of

traffic. Stenson sounded the horn and accelerated his speed intending to pass the Scheller truck. He testified that he did not know that the Schumacher truck was preceding the Scheller truck until he got in the west lane of the highway. When he was about halfway past the Scheller truck, he observed that the distance between the two trucks was from seventy-five to one hundred feet. He further testified that he did not see the intersecting town road ahead, that when the front of his car was about even with the back of the cab of the Scheller truck, the Schumacher truck made a slight swing to the right (east) and then turned abruptly to the left across the west lane of travel onto the intersecting town road. The Stenson car was then approximately one hundred feet south of the intersection. When Stenson saw the Schumacher truck turn across his line of travel he immediately applied his brakes. He lost control of his car and it went into the ditch on the west side of the highway. The car traveled along the ditch and came into collision with a culvert under the intersecting town road. This ditch was between two and one half to three feet below the crest of the highway. The Stenson car was completely wrecked and plaintiff sustained serious injuries.

The day was clear, and the pavement was dry. Stenson was traveling at a speed of from forty-five to fifty miles per hour, and he turned into the west lane of travel when his car was at least one hundred fifty feet south of the Scheller truck. When Stenson got into the west lane, he then saw the Schumacher truck preceding the Scheller truck in the right or east lane of travel. At that time the distance between the Stenson car and the Schumacher truck was at least three hundred feet. Schumacher gave no notice or signal of his intention to turn west at the intersection. Schumacher testified that when his truck was approximately one hundred fifty feet south of the intersection he looked into his rear-view mirror and, seeing only the Scheller truck to the rear,

he commenced to make a gradual swing over the black line in the center of the highway. He further testified that before turning west he could see approaching vehicles from the south for at least a half mile unless such vehicles had approached close to the rear of the Scheller truck.

After a careful study of the evidence and consideration of the physical facts, we are of the view that the court was warranted in holding Stenson negligent as a matter of law as to lookout, control and management of his car. The jury found causation in these respects. We have serious doubt that the evidence was such as to warrant the court to take from the jury the questions as to speed and as to Stenson's negligence in attempting to pass the Scheller truck. However, comparative negligence was not an issue in the case. On the court's finding that Stenson was negligent in respect to lookout, control and management, and the jury's finding as to causation in these respects, the verdict and judgment against defendant Stenson must stand.

Now as to the negligence of the defendant Schumacher, the jury found that he was negligent in not giving a manual signal of his intention to turn at the intersection, and the court did not disturb this finding. The jury further found that such negligence on his part was a cause of the plaintiff's injuries. The court changed this answer as to causation.

As to Schumacher's duty to give a manual signal of his intention to turn, the court charged the jury as follows:

"Now, as to the last subdivision of question 3 which reads: In respect to not giving a manual signal of his intention to turn? This is simply a question of ordinary care. There is no provision of the statute requiring Hans Schumacher to give any manual signal of any nature before making the turn in question. He is only required to do so when a situation arises from which he knows or in the exercise of ordinary care should know a signal of warning should be given. He is bound to exercise ordinary care, and ordinary care alone as to the use of the signal, and ordinary care means all such care as is usually used by an ordinarily prudent and

competent automobile driver under the same or similar circumstances.

"So unless you find from the evidence that the defendant Hans Schumacher ascertained that the Stenson automobile was approaching from the rear, and unless you find that Hans Schumacher should have anticipated that he could not make the turn with safety to the Stenson automobile without giving a signal of his intention, then your answer to the question should be 'No.' "

The above instruction is faulty in that it eliminated the issue as to whether Schumacher in the exercise of ordinary care should have ascertained that the Stenson car was approaching from the rear. That part of the instruction which reads : "So unless you find from the evidence that the defendant Hans Schumacher ascertained," etc., limited the issue to actual knowledge. The inquiry should have been whether Schumacher ascertained or in the exercise of ordinary care should have ascertained that the Stenson car was approaching from the rear. Since the instruction was more favorable to the defendant Schumacher than it should have been, he cannot complain of the error. The jury answered this question in the affirmative in plaintiff's favor and she does not complain.

While it is true that there is no statute requiring Schumacher to give a manual signal of any nature, before making the turn in question, to cars approaching from the rear, sec. 85.16 (2), Stats., provides :

"The operator of a vehicle upon a roadway shall not deviate from the traffic lane in which he is operating without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear."

In *Cherney v. Simonis,* 220 Wis. 339, 343, 265 N. W. 203, the court held that sec. 85.16 (2), Stats., does not exempt intersections from the operation of its mandate. In that case the plaintiff was riding in the car of the defendant Simonis which was followed by the Zynda car. The colli-

sion occurred at a road intersection when Zynda was attempting to pass the Simonis car as the latter car was turning left on the intersecting road. At page 343 the court said:

"Sec. 85.16 (2), Stats., provides that a driver in a roadway must not deviate from his lane of traffic without first ascertaining that his movement may be made in safety to vehicles approaching from his rear. This statute does not by its terms exempt intersections from the operation of its mandate, and we cannot imply any such exemption."

In that case, Simonis gave no signal of his intention to turn left on the crossroad. In the instant case, Schumacher admits that he gave no signal of his intention to turn left at the intersection. Although sub. (6) of sec. 85.16, Stats., prohibits vehicles from passing at intersections, sec. 85.16 (2) is also applicable at intersections, and puts the burden upon the operator of the vehicle making the turn in the intersection to first ascertain that such movement (turn) can be made with safety to other vehicles approaching from the rear. While Schumacher had a right to assume that no car would pass him in the intersection, he, nevertheless, had the duty before turning in the intersection to first ascertain that such movement could be made with safety to vehicles approaching from the rear.

We think it clear that the jury's finding of negligence on the part of Schumacher in failing to give a manual signal of his intention to turn west at the intersection is sustained by the evidence. The court did not change that finding.

Did the court err in changing the jury's finding that Schumacher's failure to give a manual signal of his intention to turn was a cause of plaintiff's injuries? In its decision on motions after verdict in reference to Schumacher's negligence and to causation, the court said:

"The simple question then for this court to decide is whether the failure to give the manual signal was negligence on the part of Schumacher, and then whether such negligence was a cause of plaintiff's injuries.

"Previous to attempting to pass the Scheller truck, Mr. Stenson testified that he did not see the Schumacher truck ahead of the Scheller truck, and he did not see the intersection just ahead of the Scheller truck, even though both were plain and visible as he approached the intersection from the south. He further testified that the first time he noticed the Schumacher truck was when he turned out to pass the Scheller truck, and then on noticing the Schumacher truck he immediately applied his brakes, for at that time the Schumacher truck was starting to make its turn in the intersection in question."

From our examination of the testimony, it is apparent that the foregoing statement of the trial court infers that Stenson did not see the Schumacher truck until the Stenson car had reached a point in the highway opposite the Scheller truck. It is important to note that the undisputed testimony is to the effect that when Stenson, at a point one hundred fifty feet south of the Scheller truck, turned into the west lane of travel, he then saw the Schumacher truck proceeding north ahead of the Scheller truck. In this connection, the transcript of the testimony is as follows (from the adverse examination of Mr. Stenson by Mr. Keefe):

"Q. The only signal that you gave with your horn is when you say you were at a point about 100 feet back of the Scheller truck—was it 150?, A. I said I turned out at about 150 feet, I believe, and sounded the horn after I had gone along a little bit on the left-hand side of the road, maybe for 50 feet—I might have been about 100 feet behind it [Scheller truck], isn't that what I said?

"Q. That is as I recall it, anyway. A. Yes, I think so.

"Q. And then when you got up where you could see this other truck ahead of you, you gave another signal of your intention to pass the Schumacher truck, did you? A. No.

"Q. You did intend to pass it? A. Yes, but I thought I wasn't up far enough to signal him.

"The Court: I want to ask a couple of questions of Mr. Stenson. When did you first notice the Schumacher car? A. *Why, when I turned to the—when I turned out to the left when I was approaching the Scheller car.*

"The Court: 100 to 150 feet south of the Scheller truck? *A. Yes, I could see it* [Schumacher truck] *then.*

"The Court: Now, as I understood you, you said you were driving along 45 to 50 miles an hour. Now, when did you decide to pass the first truck, the Scheller truck? *A.* When I was about 150 feet back of it."

The undisputed fact is that Stenson had a clear view of the Schumacher truck for a distance of at least three hundred feet during which time the Stenson car was in the west lane of travel. Had Schumacher looked into the rear-view mirror on his truck, he would have observed the Stenson car approaching from the rear from the time it turned into the west lane of travel. In that connection, Schumacher testified:

"*Q.* Was that a movable rear-view mirror you had or stationary? *A.* Stationary.

"*Q.* About how far out did it extend from the door of the cab? *A.* Oh, I would judge about a foot and a half.

"*Q.* And was it far enough so that you could see the entire road behind you? *A.* Yes; not close behind me; a little ways back.

"*Q.* Well, about how far back? *A.* Oh, maybe 25 feet.

"*Q.* But an observation in your mirror behind 25 feet would disclose the entire road and any object on the road? *A.* Yes."

As Schumacher approached the intersection and before he commenced to make the turn therein, it was his duty in the exercise of ordinary care to first ascertain that the turn could be made with safety to vehicles approaching from the rear. Sec. 85.16 (2), Stats.; *Cherney v. Simonis, supra.*

There was no visible indication that the Schumacher truck was going to make the turn in the intersection until the Stenson car had reached a point within seventy-five to one hundred feet of said truck. Then the first movement of the truck indicated to Stenson a turn to the east when suddenly Schumacher turned his truck to the west. We are of the opinion that there is ample support in the evidence to warrant the jury in finding that Schumacher's negligence was a

cause of the plaintiff's injuries. The jury's answer as to causation must be reinstated.

The notice of review given by the respondent Schumacher and the Farmers Mutual Automobile Insurance Company is on the ground that subdivision (c) of questions 3 and 4 should not have been submitted to the jury, since there is no statute requiring a driver turning to the left in an intersection to give a manual signal of his intention to so turn to vehicles approaching from the rear. They argue that Schumacher's duty to give a signal could arise only in the event that he actually saw the Stenson car approaching from the rear. This argument leaves out of consideration whether in the exercise of ordinary care Schumacher should have seen the Stenson car approaching. It further ignores the mandate of sec. 85.16 (2), Stats., hereinbefore quoted.

The conclusions reached necessitate a reversal of that part of the judgment dismissing plaintiff's complaint as to defendants Hans Schumacher and his insurance carrier, the Farmers Mutual Automobile Insurance Company, also reversing that part of the judgment dismissing the cross complaint of the defendant William Stenson against his codefendants Hans Schumacher and Schumacher's insurance carrier, and also reversing that part of the judgment dismissing the cross complaint of defendants Hans Schumacher and his insurance carrier against their codefendant William Stenson. In all other respects the judgment must be affirmed.

*By the Court.*—The judgment against defendant William Stenson is affirmed. That part of the judgment dismissing the plaintiff's complaint as to defendants Schumacher and his insurance carrier, the Farmers Mutual Automobile Insurance Company, is reversed. That part of the judgment dismissing the cross complaint of the defendant William Stenson against his codefendants Hans Schumacher and the Farmers Mutual Automobile Insurance Company is reversed; also that part of the judgment dismissing the cross complaint

of the defendants Hans Schumacher and the Farmers Mutual Automobile Insurance Company against their codefendant William Stenson is reversed. Record remanded with directions to enter judgment in favor of the plaintiff Miriam L. Stenson against the defendants William Stenson, Hans Schumacher, and the Farmers Mutual Automobile Insurance Company in the sum of $7,500, with interest from the date of the verdict and costs. Said judgment to provide that in the event defendant William Stenson is required to pay more than one half of the total amount of said judgment, he shall have contribution against his codefendants Hans Schumacher and the Farmers Mutual Automobile Insurance Company for any amount paid in excess of one half of the total amount of said judgment. Said judgment also to provide that in the event defendants Hans Schumacher and his insurance carrier, Farmers Mutual Automobile Insurance Company are required to pay more than one half of the total amount of said judgment, they shall have contribution against their codefendant William Stenson for any amount paid in excess of one half of the total amount of said judgment.