# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1912.

---

HENRY AMEND, ADMINISTRATOR, APPELLEE, v. LINCOLN & NORTHWESTERN RAILROAD COMPANY; CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED MARCH 12, 1912. No. 16,886.

1. **Negligence:** LIABILITY FOR DEATH FROM DROWNING: ACT OF GOD. What is known in law as the "Act of God" is an accident or unexpected occurrence due directly and exclusively to natural causes, without human intervention, the resulting injury or damage not having been produced or contributed to by the hand of man. If a resulting injury is in part produced by the wrongful or negligent act of any person, such person will be held liable therefor.

2. ———: QUESTION FOR JURY. "Whether the natural connection of events is maintained or interrupted by the introduction of a new and independent cause is usually a question of fact and not of law." *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb. 448.

3. **Railroads:** OBSTRUCTION OF FLOOD-WATERS: LIABILITY FOR DEATH. Where a good faith effort, without negligence, is made to rescue one from a place of danger, wrongfully or negligently caused by another, such effort, even if unsuccessful, will not relieve the wrongdoer from liability for the consequences of his act.

4. **Evidence:** INTOXICATION. The evidence, copied in the opinion, is examined, and found not sufficient to prove the intoxication of a rescuing party.

5. **Instructions,** a portion of which are set out in the opinion, are examined, and no prejudicial error found in them.

6. **Evidence.** The evidence is found sufficient to support the verdict of the jury.

4        (1)

Amend v. Lincoln & N. W. R. Co.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*James E. Kelby, Byron Clark* and *Stout & Rose,* for appellant.

. *Wilmer B. Comstock,* contra.

REESE, C. J.

This is an action for damages alleged to have been sustained by reason of the death by drowning of the daughter of the plaintiff, who sues as the administrator of her estate. The decedent was drowned on the 6th day of July, 1908. There is no serious question as to the sufficiency of the pleadings, and there is little conflict in the evidence. Neither the pleadings nor evidence will be set out except so far as may appear from the practically conceded facts. Plaintiff recovered, and defendant appeals.

The plaintiff with his family resided in that part of the western portion of the city of Lincoln generally known as the "Salt creek bottoms." Prior to the date of the drowning of the decedent (in 1906) the defendant, in connection. with other improvements in that vicinity, constructed a railroad grade across the principal portion of the Salt creek valley, the surface of which, with the ties and rails, was several feet above the general level of the valley, depending upon the topography of the ground. There was one opening left in the embankment for the passage of water, being a concrete bridge 250 feet in length across Salt creek. The bridge rested on nine concrete piers four feet thick at the bottom and two feet thick at the top, and which were 25 feet apart from center to center, leaving a waterway of about 220 feet in length under the bridge. Resting on these piers was a concrete "slab" two and one-half feet thick, above which were placed the ties and rails. The remainder of the work was a solid fill. We have been unable to ascertain the exact length of the embankment. It

is said by appellee in his brief to be three-quarters of a mile long.

An important question of fact is as to the capacity of the bridge to permit flood-waters to pass through. The evidence shows without conflict that the whole valley is subject to occasional overflow and has been since the first settlement of the country, and that the flood-waters have with more or less frequency covered the whole surface of the valley, which was known to defendant long prior to the final construction and completion of the grade. The channel of a stream known as "Middle creek," coming from the west and subject to overflow, was changed so as to empty its waters into Salt creek above the bridge, thus very materially increasing the quantity of water which would have to pass under it. During the forenoon of the 6th day of July, 1908, owing to very heavy rains, the waters from Salt creek and Middle creek came down to the embankment and flooded the valley above it so that the water at and around plaintiff's residence rose to the depth of six or seven feet. Later on, but on the same day, the impounded waters broke over the fill and railroad tracks and ran down onto the lower side. It is said by some of the witnesses that at that time the water above the fill was five or six feet higher than the water below. This, with other facts which we do not detail, was sufficient to justify the jury in finding that the outlet was inadequate. Water when at rest seeks its level, and had it not been for the obstruction the flood would have presented practically a level surface, and as a consequence the water would not have been so deep above the fill. Judged by this evidence, there was sufficient to justify a finding by the jury that there was a faulty construction of the track bed, and by reason thereof the waters were held back and the depth of the flood greatly increased.

It is shown that the rainfall at the city of Lincoln on the 5th and 6th of July, 1908, was greater than at any time since the year 1884 (the government records having been first kept in 1885) and .86 of an inch greater than

the flood of August 15 and 16, 1900. That there was an unprecedented precipitation to that extent cannot well be doubted. It is urged that this constituted an act of God and for which defendant could not be held responsible. This might be urged with more persuasive force had it not been for the construction of the obstructing fill which acted as a dam and greatly augmented the danger.

The question of the negligence of defendant in constructing its fill and roadbed and its provision for the escape of flood-waters was one of fact for the consideration of the jury. The jury having found by their verdict, supported by sufficient evidence, that such was the fact, we must for the purposes of this appeal accept it as final. It is pretty well settled that if a wrong or act of negligence is committed and that act contributes proximately to the injury, even though combined or in conjunction with the act of God, the wrongdoer will be liable. It is not deemed necessary to discuss this subject further, as we think it clear that, whenever any wrongful, careless or negligent act of man contributes to an injury, he cannot escape liability by showing that such injury was produced in part by the act of God. Hence, if in negligently damming a stream and such floods come as might with propriety be denominated the act of God, and by reason of the negligently constructed dam an injury resulted greater than would have been suffered had the dam not been so constructed, the wrongdoer cannot escape liability by showing that the storm flood was, of itself, the act of God. As stated by the decisions and authorities, if by any act of man in conjunction with the act of nature an injury is inflicted, he will be held to respond for the injury suffered. In 1 Cyc. 758, it is said that the act of God "may be defined to be any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains or care, reasonably to have been expected, could have been prevented"—citing cases in note. 1 Words and Phrases, 118.

It is shown that early on the morning of the 6th of July,

1908, the water above the railroad embankment, or grade, rapidly accumulated over the surface of the valley. Plaintiff had left his home at an early hour to go into the business section of the city of Lincoln on an errand. During his absence, which was not prolonged, the water rose to such an extent as to prevent his return to his home. His family were in the residence. As the flood increased plaintiff's wife placed their children upon the table. The water rose in the house to a depth of over three feet. Finding that she could not save the family in that way she made her way to the porch, and with the help of a son she and the children were lifted to the roof of the porch. The rain was falling and they were unprotected when two men came to the house in a small boat. The water was at that time six or seven feet deep in the street and yard in front of the house, and all escape by the unaided efforts of the family was completely cut off. A part of the family, including decedent, were lifted from the porch roof into the boat, and as thus laden the boat started for a place of safety. On the way toward the shore the boat came in collision with a telegraph or telephone pole, was overturned, and plaintiff's daughter drowned. There is no evidence of any wilful or wrongful act on the part of those in charge of the boat. The overturning of the craft is not shown to be other than accidental and without fault. A great number of boats were in use, and hundreds of people were transferred from their places of danger in their homes to safety.

It is insisted that plaintiff's family were in a safe place and out of danger while upon the porch roof; that their removal therefrom was the interference by a new and independent element or agency which caused the accident, but which was not in any way procured, set on foot or contributed to by defendant; that there could be no connection in natural sequence between the construction of the embankment, even if negligently and wrongfully made, and the drowning of plaintiff's daughter. The rule of law upon this subject is well stated by Post, J., in *St. Joseph*

& *G. I. R. Co. v. Hedge,* 44 Neb. 448, where it is said: "The question in all such cases is whether the facts shown constitute a continuous succession of events so linked together as to make a natural whole, or was there a new and independent cause intervening between the wrong and the injury. The intervening cause must be one not produced by the alleged wrongful act or omission, but independent of it, and adequate to produce the result in question. There may be, it is evident, a succession of intermediate causes, each dependent upon the one preceding it and all so connected with the primary cause as to be in legal contemplation the proximate result thereof (citing cases). Whether the natural connection of events is maintained or broken by the intervention of a new and independent cause is, according to the authorities cited, a question of fact." See, also, *Cornelius v. Hultman,* 44 Neb. 441.

Accepting this as a correct statement of the law upon the subject, it is left for us to inquire whether the evidence disclosed sufficient to justify the submission of the case to the jury. As we have seen, there was enough to justify the jury in finding that defendant by its servants and agents had full knowledge of the habits of Salt creek as to the overflowing of its waters at the place where the embankment was constructed. This, and the question of the negligent construction of the embankment, and that that construction was the cause of the damming up of the water, by which the valley was flooded to the depth named, were questions of fact to be solved by the jury. Assuming, as we must from the verdict, that the jury found these facts in favor of plaintiff, the inquiry would be whether the action of the persons in charge of the relief boat constituted a new and independent cause of the accident, so far disconnected from the original cause as to relieve defendant of liability? As we have seen, the valley was so covered with flood-waters as to render it impossible for the people residing in that part of the city to escape from, or go to, their homes by their usual methods of travel. The only method by which this could be done was in the use

of boats or rafts by which the people could be floated out or in. The decedent, with her mother and other members of the family, had taken refuge on the roof of the porch, having been driven there by the depth of water in the house. The rain was falling during the time they were so situated, and had been so falling during the entire day. They were drenched with water, and, beyond doubt, in a very precarious situation. One of the chilren was a babe in arms. Acting upon the humane impulse to relieve the distressed and render aid to the suffering, the people more fortunately situated undertook to assist those thus marooned and in danger to places of safety. One of the boats, in charge of two men, one of whom was a special policemen, went, or was sent, to the relief of plaintiff's family. A part of the family, including decedent, were placed in the boat and started for the shore. There is no proof that the boat was overloaded. The mother and others were left on the porch roof to be taken off later. On the way to the shore the boat was cast against or, in some way, struck the obstruction, was capsized, and plaintiff's daughter and the child referred to were drowned. There is no evidence that those in charge of the boat were guilty of any wrongful act or negligence causing the accident. All efforts were directed to the relief of those who had been placed in danger by the increased depth of the flood, found by the jury to have been caused, in part at least, by the negligent construction of the embankment. It is not necessary for us to decide what the effect upon defendant's liability would have been had the rescuers been shown to have been guilty of negligence, for no such negligence is shown. It could hardly be claimed that, where a good faith effort, without negligence, were made to rescue one from a peril wrongfully or negligently caused by another, such effort, if unsuccessful, would relieve the original wrongdoer.

There is an intimation in the evidence, and referred to in defendant's brief, that the men in charge of the boat, which removed decedent from the house, were under the

influence of intoxicating liquor. They were working in the rain and were doubtless very wet. When they came to the house they asked for whisky, but none was given to them. The brother of decedent was standing in the porch in some three feet of water and assisted in transferring a portion of the family to the boat. We quote the following from his testimony: "Q. Your mother was not very willing to trust the children in the boat without being with them? A. Yes, sir. Q. Didn't you say she wanted to go with them? A. Yes, sir. Q. Was Mr. Coburn the other man besides Mr. Hudson? A. I don't know. I heard his name was Heny. Q. Were the boatmen under the influence of liquor? A. That is what they asked for when they were there. Q. They asked for whisky? A. Yes, sir. Q. Did you give it to them. A. No, sir. Q. Did they really get whisky at the house? A. No, sir. Q. What is the reason your mother did not want the children to go with them without being with them? A. That was the reason. Q. They had the appearance of being somewhat under the influence of liquor? A. Not while they were sitting down in the boat. Q. But when they got up? A. Yes, sir. They showed the star, and he said he would send down and get them, and of course we could not do anything else, and they pushed the boat away from the porch and took them anyhow. Q. That is the reason your mother did not want them to take the children without being along? A. Yes, sir. Q. But they did not get any whisky at your house? A. No, sir." The mother did not testify as to the condition of the men, nor give any reason why she desired to accompany her children. Without reference to the competency of the testimony of the son as to the mother's reasons for desiring to enter the boat, we are unable to find any proof that the rescuing men were so intoxicated as to interfere with their effective labors on behalf of the family, if under the influence of liquor at all. There is nothing in this evidence requiring further notice.

It is insisted by defendant that the trial court erred in giving numbers 4, 11, 12 and 13, of the instructions given

to the jury. Instruction numbered 4 is as follows: "The burden of proof in this case is upon the plaintiff to establish all the material allegations of his petition by a preponderance of the evidence, and if you find that the evidence is equally balanced, or that it preponderates in favor of the defendant, then you should find for the defendant. The material allegations of said petition are: (1) That the defendant's railroad improvements complained of in the petition were negligently constructed and caused flood-waters to accumulate at number 228 F street in the city of Lincoln, which would not have accumulated except for such improvements. (2) That in consequence of such diversion and accumulation of said flood-waters the life of Catherine M. Amend was imperiled, and that she was compelled to flee for safety. (3) That her death was caused by the negligence of the defendant in the construction of the embankments and inefficient openings therein, near her home. (4) That her parents have sustained a pecuniary loss by her death." The objection to this instruction is the failure of the court to include, or add to the third clause, the words, "and not by any other intervening efficient force or cause," as requested in number 2 of those asked by defendant. While it may be that the instruction is not open to criticism, as it was given, if standing alone, yet, even if it is not complete, the subject is sufficiently covered in instructions numbered 8 and 10, in which all necessary information upon that part in question was given.

Objection is made to number 11. The consideration of this instruction carried with it the tenth. They are here copied: "Number 10. Where the casual connection between the negligence complained of and the injury inflicted is interrupted by the interposition of an independent human agency, which of itself inflicts the injury, the independent agency, in law, is regarded as superseding the original wrong complained of. In such case, the new intervening cause becomes the proximate cause of the injury, while the original wrong becomes the remote cause

only, and is not actionable.  Number 11.  It is contended by the defendant that, even though it did negligently, by its railroad grades and embankments, accumulate and divert the waters of Middle creek and Salt creek, and thereby imperil the life and safety of Catherine M. Amend, it would not be liable for her death, because the proximate cause of her death was the overturning of the boat in which she was being conveyed from her home to higher and more elevated ground.  But, before you could find that the overturning of the boat was the proximate cause of the death of Catherine M. Amend, you must find that the intervening cause of the overturning of the boat was not procured or produced by the original act of accumulating and diverting the waters of the creeks aforesaid, if you find they were wrongfully and negligently accumulated and diverted.  Where the evidence discloses a succession of intermediate events, each dependent upon the one immediately preceding it, and all depending upon the original act complained of, such original act is, in legal contemplation, the primary and proximate cause of the resultant injury."  No criticism is made on number 10, but it treats of substantially the same subject as the other.  The objection to number 11 is in the use of the words, "it is contended by defendant that," at the beginning, and the words, "before you could find that the overturning of the boat was the proximate cause of the death of Catherine M. Amend," you "must find" that the intervening cause of the overturning of the boat "was not" procured or produced by the original act of accumulating and diverting the waters, etc.  As to the first words quoted, it is apparent from the whole record that the instruction stated the contention of defendant correctly.  It is claimed that the use of this language tended to discredit the general rule stated in the tenth.  It is possible that the proposition might have been stated in other language, but we are unable to detect any prejudice in the phrase adopted. The other clause correctly stated the law.  If the construction of the embankment was negligent and "the evidence

discloses a succession of intermediate events, each dependent upon the one immediately preceding it, and all depending upon the original act," etc., it would be necessary for the jury to find that the overturning of the boat was the independent, intervening, proximate cause of the death.

The twelfth instruction is complained of, but it is not deemed necessary to set it out here, as it is in harmony with the law as stated herein upon the concurrence of the negligent acts of a wrongdoer with the act of God. It need not be further noticed.

The thirteenth instruction is in harmony with our holding in *St. Joseph & G. I. R. Co. v. Hedge,* 44 Neb. 448, and need not be set out.

The final contention, that the evidence is not sufficient to sustain the verdict and judgment, has been sufficiently noted in the body of this opinion, and the evidence will not be further reviewed.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

ROSE, J., took no part.