CHARLES DAVIS, APPELLEE, v. UNION PACIFIC RAILROAD
COMPANY, APPELLANT.

FILED APRIL 29, 1916. No. 18628.

Carriers: INJURY TO PASSENGER: DEFENSE. In a suit for damages for
    personal injuries, an act of God is no defense if defendant's negli-
    gence was a concurrent cause of plaintiff's injuries.

APPEAL from the district court for Valley county:
JAMES R. HANNA, JUDGE. *Affirmed.*

*Edson Rich, A. G. Ellick* and *B. W. Scandrett,* for ap-
pellant.

*E. P. Clements, contra.*

ROSE, J.

This is an action to recover damages in the sum of
$2,610 for personal injuries sustained by plaintiff while
a passenger on a train running on defendant's railroad
track from North Loup to Ord. Plaintiff pleaded that
the car in which he was riding was blown from the track
by a storm and overturned about three miles from North
Loup. He alleged further:

"That a stove placed in said car by the defendant was
so carelessly and negligently secured and fastened to the
floor of said car and the fastenings of said stove were so
carelessly and negligently maintained by the defendant
that when said car was overturned said stove broke said
fastenings and was hurled against and upon the plaintiff,

99 Neb.—49

and the plaintiff was thereby greatly injured; that the
overturning of said car by said storm would not have
caused said stove to break loose from the floor of said car
if said stove had been properly secured and the fastenings
thereof properly maintained; that the plaintiff was
uninjured by the overturning of said car, and, had it
not been for the negligence and carelessness of the de-
fendant and its servants in securing said stove in said
car and in permitting the fastenings of said stove to be-
come out of order, the plaintiff would have escaped in-
jury."

Defendant denied negligence, and pleaded that the
storm which overturned the car was the act of God and
the sole cause of plaintiff's injuries. The reply to the
answer admitted that the storm was an act of God result-
ing in the overturning of the car, but pleaded:

"The plaintiff alleges that his injury and damages were
not caused by, or the natural result of, the overturning
of said car, but were wholly the result and consequence
of the negligence of the defendant in failing to secure and
properly maintain the fastenings of the stove placed in
said car by the said defendant."

The jury rendered a verdict in favor of plaintiff for
$170.81. Defendant moved for a judgment in its favor
on the pleadings notwithstanding the verdict. Rev. St.
1913, sec. 8008. The motion was overruled. From a
judgment on the verdict, defendant has appealed.

There is no bill of exceptions preserving the evidence,
and the only question presented by the appeal is: Should
the trial court have sustained the motion of defendant
for judgment in its favor notwithstanding the verdict?
The answer depends on the pleadings. For the purposes
of this question the allegations of the petition and the
reply must be regarded as established. Plaintiff alleged
that his injuries were not caused by the overturning of the
car. He pleaded that they resulted from negligence of
defendant in failing to properly fasten the stove. The
rule is that an act of God is no defense if defendant's neg-

ligence was a concurrent cause of the injury. *Amend v. Lincoln & N. W. R. Co.*, 91 Neb. 1. In 1 Shearman and Redfield, Negligence (6th ed.) sec. 39, it is said:

"It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given.  *  *  *  But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury."

It follows that the motion for judgment in favor of defendant notwithstanding the verdict was properly overruled.

AFFIRMED.

HAMER, J., dissenting.

There was no bill of exceptions brought to this court. The case was disposed of on the petition, the answer, and the reply, together with a motion for judgment notwithstanding the verdict. This requires a careful examination of the petition, the answer, the motion for judgment notwithstanding the verdict, and the reply. The petition alleges that the plaintiff purchased a ticket at North Loup April 25, 1912, which entitled him to ride from North Loup to Ord on the defendant's railroad, and that he then became a passenger on said railroad between said points; that while the train was running between said stations, and at a point about three miles northwest of North Loup, a violent storm blew the car in which the plaintiff was riding from the track, and that it went over upon its side; "that when said car was overturned said stove broke said fastenings and was hurled against and upon the plaintiff." It was the stove which was hurled. According to the answer, and also according to the reply, the thing which broke the stove loose and which hurled

it was the act of God. It was within the power of the act of God to use whatever force was necessary to break the stove loose. For this reason nothing within the ingenuity or power of man was sufficient to overcome the act of God.

The answer admits that the plaintiff was a passenger on the cars of the defendant, and that he was being transported from North Loup to Ord, and alleges that "a violent wind storm arose which blew said train from said track, and upon its side; but defendant alleges that the wind storm was of a tornado or cyclonic nature, of extraordinary force and violence, an act of God, and beyond all human power and agency to either resist or control, and of such force, violence and sudden approach that it could not be anticipated by human foresight, and was beyond the power of this defendant and all other human power to avoid or guard against." The allegations in the answer, to the effect that the storm was of extraordinary force, and that it was the act of God, and that the car was overturned thereby, are admitted by the reply. The reply admits "that said storm was of extraordinary force and violence and was an act of God, and that said car was overturned thereby." It was probably on this admission contained in the reply that no bill of exceptions was settled and brought to this court. The allegation in the reply that "said storm   *   *   *   was an act of God, and that said car was overturned thereby," was enough to show that all the power required to overturn the car was at hand. The act of God was of itself enough to make the storm irresistible. The plaintiff put in his reply an admission that of necessity must determine the case against him if any attention is paid to the thing which he pleaded. After he had conceded that the storm was an act of God, and that it overturned the car, he proceeded to allege that his injury and damages were not caused by the overturning of the car, but by the negligence of the defendant in failing to secure the fastenings of the stove in said car. He undertook to state something, but he does it by way of conclu-

sion, and no steps leading up to what he claims are set out. Of course, he could make no admission so bad that he might not say something so far as words are concerned. If the plaintiff's head had been cut off, it might be considered that there was nothing further to allege. The reply in this case undertakes to allege something further after making a reply which stipulates away the merits of his case. It is the contention in the majority opinion that there can be a sufficient reason given for *bringing about a certain result,* and yet something else may *contribute.* If the reason is given, that is enough. When the defendant moved for judgment notwithstanding the verdict, that was in the nature of a demurrer to whatever allegations of fact were well pleaded. The motion did not admit the truth of impossible things or inconsistent things. If the act of God was the *proximate cause of the injury,* then there could be *nothing else.* Could it reasonably have been foreseen that a storm would arise, that it would blow the train from the track, and cause the car in which the plaintiff was riding to be thrown off the track and thrown over upon its side?

Section 6052, Rev. St. 1913, provides: "Every railroad company shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the persons injured, or when the injury complained of shall be the violation of some express rule or regulation of such road actually brought to his or her notice." To these exceptions there should be added, by operation of law when the injury occurs by the act of God.

As the storm which overturned the car was admitted in the reply to be the act of God, and the fastenings which held the stove "broke" while the car was being *overturned,* and the force of the storm overturned the car and broke the fastenings and "hurled" the stove against the plaintiff, it was the storm which caused the injury, and therefore there is no liability. Take out the storm and what is left? Take out the storm that caused the injury and nothing is left. Therefore it *was the storm.*

As the force which overturned the car and broke the fastenings was the act of God, no one can be heard to say that the power was insufficient to break the fastenings, however they may have been made. The act of God as against the strength of the creations of men and their ingenuity is irresistible. If it was strong enough to lift the car off the track, then it was strong enough to lift everything in that car and put it off the track along with the car. It lifted the stove with the car, and in the language of the petition "when said car was overturned said stove broke said fastenings and was hurled against and upon the plaintiff." Here is a statement from which it is fairly to be inferred that the act of God lifted the stove, and in lifting it broke the fastenings and then hurled the stove against the plaintiff. The plaintiff undertakes an impossible problem; that is, to *divide the force* and to say that it *stopped* with lifting the car and its contents off the track; and he undertakes to say "that the overturning of said car by said storm would not have caused said stove to break loose from the floor of said car if said stove had been properly secured and the fastenings thereof properly maintained." He undertakes to make the power of man superior to the power of God. When the act of God is without power to accomplish that which it seeks to do when arrayed against the power of man, then plaintiff may present such a problem. The statement that the fastenings of the stove were not "properly maintained" is not supported by any details of fact; only a conclusion is stated. We do not know the manner in which the stove was fastened, nor by what it was fastened; the only thing we are permitted to know under the statement is that the act of God first hit the car and then moved the stove until it was hurled against the plaintiff. The extraordinary force and violence of the storm are *specifically* admitted; that the storm was an act of God is also *specifically* admitted; that the car was overturned by said storm is also specifically admitted; and there is no denial of the fact alleged that the storm was "beyond all

human power and agency to either resist or control." The allegations of the *answer are not denied.*

No one may be able to tell the force of the storm which comes from the source of unlimited power, nor may any one prepare against it. The storm is admitted by the pleadings to be the act of God, both in the answer and in the reply, and it is shown by the statement contained in the reply to have been the force that overturned the car and broke the fastenings which secured the stove, and which said stove, as alleged in the petition, was "hurled" against the plaintiff. It will not therefore be deemed that the fastenings were weak or insecure or improperly made, but only that they were *overcome* by the force of the storm, which may be considered to have been irresistible *because* it was an act of God.

It is a fundamental proposition in the law of negligence that, to make an act of negligence actionable, there must exist three elements: (1) A duty or obligation which the defendant is under to protect the plaintiff from injury. (2) A violation of that duty; that is, a failure to perform the duty or obligation owed. (3) Injury resulting from the failure. In the present case the duty was to secure the stove with fastenings sufficient to hold it in a safe position while the car was subjected to its *ordinary uses.* It is manifestly impossible to anticipate that a certain car will be subjected to the stress and strain of a cyclone, and equally impossible to know how to secure a stove in a car in such a manner that, if the car is subjected to a wind of such fury as to establish that it is an act of God, the stove will remain secure. That is only another way of saying that man is stronger than the Supreme Power. The act of God is an act of Omnipotence, or power which human agency cannot prevent or stay. 4 R. C. L. p. 708.

It is not claimed that the stove was secured in a manner which made it unsafe when the car was in ordinary use. The car was thrown from the track by an act of God. The act of God therefore, as admitted in the reply, became the direct and *proximate* cause of breaking the fastenings

which secured the stove. They were broken by a force which could not have been guarded against.

Nearly every neighborhood has had at least one such storm. When a tiny whirlwind goes round and round down by the little creek in the lonesome woods, and then slowly and softly emerges and goes tiptoeing across the meadow, and the fields, and farms, and prairies, rapidly gathering strength and anger as it journeys upon its dangerous course, lifting the river out of its bed, and twisting the strong oaks and elms standing on its banks until only splintered stumps remain, picking up the settler's house, and barn, and granary, and the windmill standing at his well, and sweeping them into space, so that they come back no more, and never again are seen by the eyes of men—it is this that is the act of God and against which the ingenuity and strength of men are futile.

In *McClary v. Sioux City & P. R. Co.*, 3 Neb. 44, a train was running three-quarters of an hour behind the usual, ordinary and advertised time. It was upset by a sudden gust of wind which crossed the track. It was contended that if the train had been running on time the wind would not have reached it. In an action for damages because the plaintiff was cut and bruised, it was held that there was no liability, that the injury complained of was not the natural result of the train being behind time, and that the damages sustained were too remote to entitle a recovery against the carrier.

In *Galveston, H. & S. A. R. Co. v. Crier*, 45 Tex. Civ. App. 434, the plaintiff alleged as negligence that the defendant ran its train at an excessive rate of speed directly into the path of the storm, which he could and should have avoided by coming to a stop. The court said that there was nothing to show that the defendant's engineer and conductor were guilty of negligence in failing to stop the train before encountering the whirlwind, had they known, or had reason to believe, it was impending; but they had no more reason to believe that it would strike the railroad

where it did than any place along its road where the train might have stopped.

The case of *Amend v. Lincoln & N. W. R. Co.*, 91 Neb. 1, cited in the majority opinion, does not seem to be in point. In that case part of a family, including the decedent, were lifted from a porch roof by a rescue party into a boat, and then the boat started for a place of safety, going over flood waters which surrounded the building. The boat came in contact with a telegraph or telephone pole and was accidentally overturned, and the plaintiff's daughter was drowned. The flood which made the trip in the boat necessary was claimed to have been occasioned by the construction of railroad tracks which prevented the water from escaping in natural channels. The liability of the railroad companies was alleged to be based upon the fact that the road had been so constructed as to impound the water and prevent it from being carried away. The flood case cited lacked the question of sudden and unexpected approach of the storm as that question is presented in the instant case, and it lacks the question of the act of God being irresistible; it also lacks the question of inferiority of the works and strength of man as compared with the act of God, and it lacks the attempted cutting off of the power projected, which is not in the instant case attempted to be stated by the defendant. The superiority of the act of God over the ingenuity and strength of man is not presented in the case cited.

The right of the defendant to build its railroad and run its cars without confiscation by an apparently unfriendly judicial proceeding is protected by the federal Constitution (Amend., art. XIV, sec. 1). The purpose sought in the instant case is to take the property of the railroad company without due process of law, and to deny to the railroad company the equal protection of the law. The defendant cannot properly be held to be liable to the plaintiff in an action for damages for injury based upon the alleged negligence of the defendant railroad company; there being no negligence in the defendant's failure to fore-

see the storm, or to successfully guard against its force.  It is an arbitrary thing to punish the defendant for that which it could not anticipate and could not resist.

It is also in violation of section 3, art. I, Const. Neb., which reads: "No person shall be deprived of life, liberty, or property without due process of law."