JESSE GRECO, APPELLEE, V. WILLIAM SHAVER: OMAHA &
COUNCIL BLUFFS STREET RAILWAY COMPANY; APPELLANT.

2 N. W. (2d) 526

FILED FEBRUARY 13, 1942. No. 31276.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Carnazzo & Kazlowsky, Archie C. O'Brien* and *John J. Long, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action for damages brought by the plaintiff against the defendant street railway company and one

(1)

William Shaver for injuries arising as the result of a collision. The jury's verdict was for $2,500 in favor of the plaintiff and against both defendants. The trial court ordered a remittitur of $750 which plaintiff granted, reserving the right in the event of an appeal to present the remittitur order as error. Defendant Shaver did not appeal and is not before this court. Defendant street railway appeals presenting as error the insufficiency of the evidence to sustain a judgment against it, various instructions given or refused, and other matters. Plaintiff cross-appeals from the order of remittitur.

The accident occurred about 4:30 p. m. on May 5, 1939, on Twenty-fourth street just north of Poppleton in the city of Omaha. The weather was clear and warm; the pavement was dry. Poppleton street runs east and west; it is about 40 feet wide and at the intersection of Twenty-fourth is on the crest of a low hill running east and west. Twenty-fourth street is paved, runs north and south, and slopes uphill to Poppleton from the south and downhill to the north. The defendant operates a double-track line on Twenty-fourth street. At the time of the accident there was a Terraplane coupé parked facing north on the east side of Twenty-fourth street, and about 20 feet north of Poppleton, parked further north of the coupé, with about 10 or 15 feet distance intervening, was a panel truck owned by the plaintiff. The plaintiff was standing behind his truck (between it and the coupé) taking some materials out of his truck. At that point the distance between the east rail of the north-bound street car track and the curb is less than 13 feet, so that when a street car going north was passing the parked truck there was not sufficient space for an automobile to pass between the parked cars and the street car.

Defendant's street car coming from the south going north approached Poppleton street and stopped on the south side of that street. It then started up going north and gaining speed, but its maximum speed as fixed by the undisputed evidence did not exceed 12 miles an hour.

Defendant Shaver, driving a panel truck approached

Poppleton street from the same direction going at a speed fixed at 20 miles an hour, overtook the street car as it was in Poppleton street (traveling to the right of the street car) and getting out in front of it as the downgrade began on the north side of Poppleton. As the parked coupé became visible, the defendant Shaver turned his truck toward the left, cut in ahead of the street car and onto the street car track. The undisputed evidence is that the motorman saw the Shaver truck as it came abreast the front of the street car. He then sounded the gong, applied the "sand," put on his brakes, and stopped as quickly as the mechanism of the car would operate.

There is not much dispute between plaintiff's and defendants' witnesses as to what happened. Plaintiff's only witness as to the collision, his nephew, was standing near the plaintiff but on the curb. He was asked to tell what he saw, and answered: "Well, I seen a truck angling over towards the west in order to get through; I seen the street car hit the truck. The truck swung over to the—swung over, hit the coupé, and the coupé—and all together were all four of them, in a bunch, and Mr. Greco was pinned in between his door and that coupé." Asked when he first saw the truck, he answered: "When I first saw it, it was swinging over toward the west, to get by. * * * Get by that parked car there." The examination then proceeded as follows: "Q. Where was it with reference to the street car? A. It was ahead—it was north of the street car. Q. Now, did you see both the street car and the truck come together? A. Yes; I did. * * * Q. From where you were could you tell me whether the automobile, the truck, was struck in the front or to the rear? * * * A. It was struck to the rear. Q. Now, what part of the rear; the left, the right or in the center? * * * A. It would be the left rear. Q. And after they came together, will you just tell now what happened to the truck? A. The truck swung. hit the— Q. Well, which direction did it swing? A. It was facing northwest. Q. And did it strike any other object as it was swinging? A. Yes; it smacked that coupé in back of us. Q. And what happened

to the coupé after the truck struck it? A. It came down and hit our truck and pinned Mr. Greco in between them. Q. Now, did you notice what the street car did after it came in contact with the truck? A. Well, it didn't stop. Q. Did it go north? A. It just kept coming north. It stopped just when it couldn't go any more." One of defendant's witnesses (a passenger on the street car) described what happened as follows: "Q. Now, will you turn to these men and tell them in your own way just what you saw, from the first you saw the panel truck until the whole thing was over? Just what you know, in your own way? A. Well, I was standing looking to the east, and I glanced—our street car was past Poppleton when I saw that red panel truck come real fast, and there was another car parked next to the curb, and this panel truck seemed like he had to get through this little place, and he dashed through this little opening, and the street car—and it hit the street car. The opening was too small for the truck to get through."

Defendant's motorman's testimony varies as to how it happened in that he says the Shaver truck first hit the Terraplane and then hit the street car.

After the collision the four vehicles were in about the shape of a "Z" with the street car forming the base, the Shaver truck the diagonal line with its rear left fender at the running board against the right front corner of the street car and the left rear side of the truck along the right front entrance of the street car. The right side of the Shaver truck was then against the left rear of the Terraplane coupé, the Terraplane coupé was against the plaintiff's truck, and plaintiff was in between the last two vehicles. Plaintiff's truck was not moved by the impact but had to be pushed ahead to remove plaintiff, who was injured.

Defendant at the close of the plaintiff's case in chief and again at the close of all testimony moved that plaintiff's cause be dismissed as to it for the reason that the evidence is insufficient to establish a cause of action against it.

"Negligence consists of doing what a reasonable and prudent person would not have done, or in not doing what

a reasonable and prudent person would have done under the existing circumstances." *Blanton v. Michael, Swanson & Brady Produce Co.,* 138 Neb. 883, 295 N. W. 883. We are directly confronted with this question. What negligent act can be charged to the defendant? What did it do that it should not have done? What did it fail to do that it should have done? A search of the record does not disclose the answer.

The trial court submitted to the jury the question of the concurrent negligence of the defendants as the cause of plaintiff's injuries and submitted four particulars in which plaintiff claimed defendant was negligent, which we summarize. First, that it failed to halt its street car when it knew or should have known that a collision was imminent; second, that it carelessly and negligently left its car in motion when it knew or should have known that its continued operation would cause a collision between the street car and the truck; third, that it carelessly and negligently failed to allow the truck driver to overtake and pass the street car when it knew that its failure to do so would cause a collision; and, fourth, that it failed to keep a proper lookout. The answer to all of these alleged acts of negligence is that the plaintiff's evidence is devoid of any evidence to sustain them. Also, the defendant's evidence is all to the effect that the Shaver truck was going faster than the street car, that the truck cut in ahead of the street car, that the motorman was keeping a lookout, that he applied his brakes as quickly as possible, that the street car stopped as quickly as possible; that the point of contact was on the left rear running-board and left fender of the truck and caused by coming in contact with the right front corner of the street car. The evidence will not sustain any finding of negligence based on those grounds. There is some dispute as to what vehicle hit what vehicle, but no matter how this evidence is viewed, the inescapable conclusion is that the defendant street railway was guilty of no act of omission or commission which will support a judgment requiring it to respond in damages to the plaintiff. "A person is answer-

able only for the natural and probable consequences of his own acts, and where some new efficient cause intervenes, not set in motion by him nor flowing from any act of his, which causes the injury, it is the proximate cause." *Moses v. Mitchell,* 139 Neb. 606, 298 N. W. 338.

It is clear from this record that plaintiff was not negligent. It is clear that defendant was not negligent. It is likewise clear that the proximate cause of the collision was the act of the defendant Shaver in driving his truck in the manner shown. Whether or not that constituted negligence is not before us for decision. The trial court erred in not sustaining defendant's motion at the close of the trial. The other assignments of error need not be considered.

Plaintiff presents the remittitur order as an error. The defendant Shaver is not before this court. The judgment against him therefore cannot be disturbed in this proceeding.

The judgment from which the appeal was taken is reversed and the cause dismissed.

REVERSED AND DISMISSED.