CLYDE C. McKAIN, APPELLEE, v. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, A PUBLIC CORPORATION, APPELLANT.

37 N. W. 2d 923

Filed June 10, 1949. No. 32531.

498

*Crosby & Crosby,* and *Robert H. Beatty,* for appellant.

*Edward E. Carr* and *C. L. Baskins,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee brought this case to recover damages to his lands and crops claimed to have been caused by water which was alleged to have escaped from the reservoirs and canal of appellant. The verdict was for the appellee. Motion of appellant for a new trial was denied, and it has appealed.

The cause of action of appellee as stated in the petition is based on the allegation that the use by appellant of its power and irrigation works caused water to seep from its canal and reservoirs and damage the lands of the appellee, and that waters from the works have seeped from the canal and reservoirs and traveled through the subsoil and alkali deposits to his lands, and have seeped in and through the soil. Appellant made no effort to secure a more specific statement in this regard. Appellee by his reply states that the damages were caused by the lands becoming saturated with water pushed in and under the topsoils by leakage of water from the works of appellant and from waters seeped from its canal and reservoirs. Prejudicial variance is claimed between the petition, the

new matter in the reply, and the evidence. These each relate to water escaping from the works of the district and resulting in seepage of the land of appellee. The issue was, did water from the works of the district cause the damage, or did the damage claimed result from rainfall and other natural causes. The conclusion that there was not a material variance is required by a prior decision of this court. Smith v. Platte Valley Public Power & Irrigation District, *ante* p. 49, 36 N. W. 2d 478.

Appellant makes the contention that there is a failure of evidence to sustain a finding that water from its works escaped and reached, affected or damaged the lands of appellee, that causal connection between water lost from the canal or reservoirs of appellant and the waterlogged condition of land of appellee is not shown, and the only support of the award in his favor is speculation. Proof thereof is indispensable to recovery herein. Smith v. Platte Valley Public Power & Irrigation District, *supra*. That the lands of appellee were seeped as early as 1943 and continued to the time of the trial in 1948, except as to the year 1947, is not a subject of dispute herein. The issue was what was the cause and source of it.

In deciding the correctness of the action of the trial court in submitting the case to the jury, the evidence will be viewed in the light most favorable to the party for whom the verdict was returned, controverted facts will be decided in his favor, and he will be given the advantage of any inferences reasonably deducible therefrom. Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757.

Appellee produced evidence tending to show that after appellant diverted water in its canal and reservoirs a very considerable amount thereof was lost by seepage, that the seepage augmented and put pressure upon the then existing ground water, and caused the ground water to rise under the land of appellee. This resulted in his lands becoming badly seeped. The evidence of appellant is that any water lost from its works did not reach the lands of appellee, and the condition complained of by

him was caused by natural conditions resulting from unusual precipitation, evaporation, and transpiration. There is conflicting evidence of experts as to the source and cause of the seepage affecting the lands. The contention here made was recently held without merit in a case referred to by the appellee as a companion case, and described by appellant as almost identical as to record and witnesses, including the experts. Smith v. Platte Valley Public Power & Irrigation District, *supra*. This issue was one of fact, and it was proper to submit it to the jury for determination.

The trial court allowed interest at legal rate on the amount of the verdict from October 1, 1945 to June 15, 1948. The judgment was entered on the latter date. The damages claimed were a matter of reasonable controversy, unliquidated, incapable of being fixed by computation, and could only be ascertained by agreement of the parties or by suit. Recovery of interest on such a claim may be had only from the date of the determination of the right of recovery and the ascertainment of the amount. Smith v. Platte Valley Public Power & Irrigation District, *supra*.

This case involved the questions: Did the conditions of the lands and crops of the appellee, of which he complained, result wholly from waters from the works of appellant; or were they caused wholly by precipitation and other conditions natural to that area; or were they the result of both waters from the reservoirs and canal of appellant and rainfall and other natural causes?

There is evidence tending to show that:

The lands of appellee are first bottom valley lands, very near the South Platte River. A part of it is accretion land. The river as it proceeds east approaches the land, and at the northeast corner is adjacent thereto. Beer Slough is between the river and the north part of the land. Fremont Slough meanders across nearly the entire length of the south part. Two draws cross this land as indicated by the map. Low marshy condition of

lands along Fremont Slough are indicated as early as 1899 by topographic map. Borrow pit, without outlet, on the north side of the east and west county road south of hay meadow of appellee, holds stagnant water, shown with growth of moss thereon. Water coming from canal of appellant to south of land of appellee would not cross to his land north of Fremont Slough, but would go east down the slough. If it was obstructed so the water could not flow therefrom, it would fill up and the water table under the land would rise. There are obstructions therein. On occasion the land dried out, and if affected by artificial seepage, it would tend to be steady or constant in its flow, and the land would remain wet. During the period of rise shown by test wells, there had been materially increased rainfall, and because thereof, evaporation had been decreased. The average annual rainfall had been for the period from 1931 to 1935, 15.54 inches; from 1936 to 1940, 13.67 inches; from 1941 to 1945, 20.65 inches; in 1946, 20.74 inches; and in 1947, 18.47 inches. Appellee in 1937 cut the larger portion of his hay meadow, except along the slough. Water was first stored in the Sutherland Reservoir in 1936. Rainfall as shown by well 242 near the State Farm, caused the water table to rise three feet in a period before and during the year 1935. The cause of this was wholly natural, no artificial contribution. Water showing up around Fremont Slough and surrounding land is partly seepage water from canal. The water table has raised from ample rainfall. It has not been determined how much is due to rainfall and how much to seepage. Alkali comes to the surface in the lowlands along the river where the water table becomes high and there is evaporation, and that happens whether the water causing the rise in the water table comes from natural or artificial sources.

Appellee bought the west half of the southwest quarter of the section in which his other lands are in June of 1947 for $4,100, after this case was commenced. This land is traversed by the slough, and the same type as his

other land. The larger part of the meadow was usually cut, but there was always a strip along the slough that was not worth cutting. There was no difference in the condition of the slough at the time of the trial and in 1910 and 1911. In the wet year of 1915 it was difficult to cut the grass, and the hay was not good on land like this. The three-cornered grass will grow in waterlogged land, but it is found through all the grass up and down the valley. In some places three-cornered grass will predominate, and in some places sedge will predominate. The round grass, three-cornered grass, sedge, and salt grass are common to the meadows up and down the Platte Valley, and predominate in waterlogged conditions. They appear and predominate when the water level rises, whether from rainfall or other conditions. There are alkali beds in the lowlands up and down the valley, and the kinds of grasses along the slough on the McKain land are found on the low meadow lands throughout the valley.

In years past persons trapped in the wintertime and fished along in the slough on the McKain land. The slough then had a gravel and sand bottom. People walked up and down it barefoot without difficulty, and there was then no mud or obstructions. There were springs along the slough in the early years, and some of them are about the same as they were in 1890. The water in Fremont Slough varied in wet and dry years. In wet years the land would become waterlogged and the lowland produced coarser grass, and in dry years there was less grass on the highland and finer and better grass on the lowland. The slough has filled up and become obstructed. The channel can hardly be identified, and after heavy rains it goes out of its banks, spreads over the meadows, and it takes from several days to several weeks before the water moves out. About 1900, a part of what is now the McKain land was broken and cultivated, but that section was so wet the party in possession gave it up and moved to higher land.

The grasses offered in evidence in this case from the McKain land are respresentative grasses growing in the entire Platte Valley. These grasses result from natural conditions in the valley.

The relative position of the underground water is primarily determined by rainfall, evaporation, and transpiration. The fluctuation shown by test wells in 1946 and 1947 was such as to show that the source or cause of any damage to appellee was not water from the south, the direction of the works of appellant. The source of the water in the ditches along the road south of the McKain land was rainfall that could not get away. The water was higher in Fremont Slough than the water table of the surrounding lands. The water in the slough was feeding the land on either side of it instead of the ground water going into the slough. The same situation is true as to Beer Slough. No water lost out of the reservoir or canal of appellant has reached or affected the McKain lands. Any seeped or waterlogged condition of these lands was the result of high rainfall, low evaporation, the clogged condition of Fremont Slough, and inadequate drainage.

The evidence would have sustained a finding that any damage sustained by appellee because of the seeped condition of his land: (1) Was wholly the result of waters from the works of appellant; or (2) was wholly caused by rainfall and other things natural to that area; or (3) was the result of both the waters from the canal and reservoirs of the appellant and natural conditions including high precipitation.

An issue as to the extent natural conditions had contributed to the waterlogging of lands of appellee, and any damage resulting therefrom, was made in the trial court, and its failure and refusal to instruct the jury in reference thereto is assigned and discussed in this court. The attention of the court was directed to this issue by a proper instruction tendered by appellant. It is the mandatory duty of the trial court, without request,

to instruct the jury on each issue presented by pleadings and evidence. Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680; Hackbart v. Rohrig, 136 Neb. 825, 287 N. W. 665. A litigant is entitled to have the jury instructed as to his theory of the case shown by pleading and evidence, and it is prejudicial error to fail to instruct the jury on such theory. Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82; 149 A. L. R. 1041; Swengil v. Martin, 125 Neb. 745, 252 N. W. 207; Hansen v. Lawrence, 149 Neb. 26, 30 N. W. 2d 63.

Appellant was liable for seepage damage to the land of appellee caused by water from its works. No recovery could be had from it for seepage damage caused by water from another source. If water from the works of appellant combined with water from another source, and the combined water caused damage to the land of appellee, before he could recover any amount he must prove either that the damage would have been done by the water from the works of appellant without the water from the other source, or he must establish the amount of the damage done by the water of the appellant. Smith v. Platte Valley Public Power & Irrigation District, *supra*. Whether the damage was caused by the combined sources of water and would not have occurred from the water of appellant's canal and reservoirs alone was a question for the jury. If they so found, then, in the condition of the record in this case, they would have been required to deny appellee any recovery herein, because he failed to offer any proof in separation or allocation of damages from natural causes and from artificial causes attributable to appellant. Smith v. Platte Valley Public Power & Irrigation District, *supra*. The failure of the trial court to instruct the jury as to this issue is reversible error.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

CARTER, J., concurring.

I concur with the result reached by the majority. I submit that the rule announced with reference to the damages for which the district is liable is neither clear nor understandable.

The district is liable for seepage damage to the lands of appellee caused by water escaping from its works. No recovery can be had from the district for seepage damage caused by water from other sources. If waters escaping from the works of appellant combined with waters from natural causes or conditions to damage the lands of appellee, and the damage would not have occurred but for such escaping waters, the district is liable for all of such damage. Damages caused by natural conditions, such as rainfall, diffused surface waters, or any other waters with which the land is burdened, must be borne by the owner of the land. But, if damage results only by the addition of waters escaping from the district's works, the district is liable for all the damages thus resulting. "As stated by the decisions and authorities, if by any act of man in conjunction with the act of nature an injury is inflicted, he will be held to respond for the injury suffered." Amend v. Lincoln & N. W. R. R. Co., 91 Neb. 1, 135 N. W. 235. See, also, Davis v. Union Pacific R. R. Co., 99 Neb. 769, 157 N. W. 964.

"It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. * * * But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." 1 Shearman & Redfield, Negligence (6th ed.), § 39, p. 76.

A purchaser of land takes it subject to natural conditions such as excessive rainfall, diffused surface waters,

and other waters, surface or subterranean, with which he is burdened by law. But if such waters do not damage the land, and damages do occur only when the waters escaping from the district's works find their way to his lands, then the district is liable for all the damage caused. If some land is damaged as a result of natural conditions, and waters escaping from the district's works find their way to the land and thereby cause additional damages, the district is liable for such additional damages.

No question of apportionment or allocation is involved. The district, stating it simply, is liable for all the damage proximately caused by its escaping waters.

I am authorized to say that Judge Chappell joins in this concurrence.