EDITH JANE WAX, ADMINISTRATRIX OF THE ESTATE OF
DALLAS E. WAX, DECEASED, APPELLANT, V. THE
CO-OPERATIVE REFINERY ASSOCIATION, A
CORPORATION, ET AL., APPELLEES.

46 N. W. 2d 769

Filed March 16, 1951. No. 32930.

*Charles A. Fisher,* for appellant.

*Edwin D. Crites,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a companion case to Fentress v. Co-Operative Refinery Assn., 149 Neb. 355, 31 N. W. 2d 225. The incidents which furnished the basis for each action are identical. The two actions grow out of a fire which occurred in Hemingford, Nebraska, on July 30, 1943. Fentress, a member of the volunteer fire department of the village of Hemingford, Nebraska, was injured in the fire and his action was to recover damages on account of alleged negligence of the Co-Operative Refinery Association. Dallas E. Wax, not a member of the volunteer fire department of the village of Hemingford, Nebraska, was also injured· in that fire from which injuries he died on August· 8, 1943.

The action here is by Edith Jane Wax, now Edith Jane Planansky, administratrix of the estate of Dallas E. Wax, plaintiff and appellant, against the Co-Operative Refinery Association, a corporation, defendant and appellee, to recover damages on the theory that the death of Dallas E. Wax was caused by the negligence of the defendant and appellee. The village of Hemingford was named in the pleadings as a defendant but there is nothing in the record to indicate that it was in fact made a party. Therefore the Co-Operative Refinery Association will be treated herein as the sole defendant.

The case was tried to a jury and a verdict was returned in favor of the plaintiff. Following the verdict and in due time a motion was filed for judgment notwithstanding the verdict as was also a motion for new

trial. The motion for judgment notwithstanding the verdict was overruled but the motion for new trial was sustained. From the order sustaining the motion for new trial the plaintiff has appealed. There is no cross-appeal from the order overruling the motion for judgment notwithstanding the verdict.

The facts in the Fentress case as reflected by the opinion very closely parallel the facts in this case as they appear in the bill of exceptions. However because of certain small but important details which are peculiar to this case it appears advisable to set forth all of the pertinent facts anew herein.

On July 30, 1943, during the noon hour the defendant undertook to make delivery of 2,500 gallons of tractor fuel and 1,500 gallons of gasoline to the Farmers Union Co-Operative Oil Association and to place it in bulk receiving tanks at Hemingford, Nebraska. This association will hereinafter be referred to as the Farmers Association. The tractor fuel tanks were above ground and delivery into them was accomplished by pumping. The gasoline tank was below ground and delivery to it was by gravity. Delivery to the premises was made by tractor and trailer. On the trailer was a tank containing three compartments. One contained 1,500 gallons of gasoline and the other two 2,500 gallons of tractor fuel. On the tractor were three tanks containing fuel for the tractor. One was the regular and the other two were auxiliary tanks. The auxiliary tanks were mounted behind the cab and the regular tank was on the left side of the cab.

On arrival the delivery unit was placed so that the gasoline and tractor fuel could be emptied into tanks at one time. A hose from the tractor fuel compartment was connected with a pump and the flow of oil was started into the tanks. A standard hose for gasoline delivery connected with the gasoline compartment was placed in an intake pipe of the gasoline receiving tank. The hose at its outer end was equipped with a brass

connection or fitting. A metal extension which had an angle of 90 degrees was attached to the brass fitting and this extension was placed in the opening leading to the gasoline tank. The opinion in the Fentress case indicates that no gasket was used where the hose was connected to the valve on the gasoline compartment. In this case that is a matter which is in dispute. There was a leak and leaking gasoline was caught in a bucket. According to the defendant's driver this leaking was stopped by tightening the connection with a pipe wrench. There was an air vent from the underground gasoline storage tank a short distance from the inlet thereto. The hoses from the gasoline and tractor fuel tanks were crossed on their way from the transportation unit tanks to the storage inlets.

Within two or three minutes after the flow of tractor fuel and gasoline was started an employee of the Farmers Association stepped across the hose. There is some indication that he made contact with the hose, possibly stumbled. An explosion occurred. It appears to have been felt by him rather than seen. Immediately thereafter fire was discovered first at the air vent of the tank and then at the gasoline inlet. It appeared somewhat as a flame from a torch. What caused the fire is not known. The fire started to ascend one or both of the hoses. An attempt was made to extinguish the fire which was unsuccessful.

The employee of the Farmers Association directed defendant's employee to drive the transport away. The Farmers Association employee closed the valve to the gasoline compartment but was unable to close the one to the tractor fuel compartment. The tractor fuel hose was pulled apart or broken as the transport unit was pulled away. This caused tractor fuel to flow out. The oil was immediately ignited. The transport unit was removed a distance of about 275 feet and over this distance tractor fuel continued to flow. The fire followed the oil the distance that the unit traveled and the unit

became enveloped in flames from which clouds of smoke billowed which could be seen up into the town of Hemingford.

A fire alarm was sounded and the attention of plaintiff's decedent was attracted. Though not a member of the fire department plaintiff's decedent rushed to the scene where probably 20 members of the department had gathered to combat the fire. When he arrived a number of firemen were manning a nozzle of a fire hose. They were an uncertain distance, probably 40 to 80 feet, in front of the transport unit.

At the time plaintiff's decedent came onto the scene his brother, who was a member of the fire department, was attempting to carry a grain door to the vicinity where the firemen were manning the hose. At his request plaintiff's decedent helped carry the grain door and helped to stand it up between these firemen and the transport unit presumably to protect them from the fire at the unit. As near as can be determined he was holding up this screen when he received the injuries which caused his death.

Almost immediately after this screen was placed an explosion of one of the fuel tanks of the tractor occurred. The explosion was in the direction of these men. It was deflected upward over the fender and fell with devastating force upon these men including plaintiff's decedent.

On these facts plaintiff's cause of action is based. The petition on which the case was tried charges negligence and gross and wanton negligence on the part of the defendant. The negligence charged, stated briefly, is that the driver of the truck violated chapter 2, article VI, section 1, of the municipal code of the village of Hemingford, Nebraska, in effect on July 30, 1943, which provision included by reference laws, rules, and regulations compiled by the State Fire Marshal in 1945 and particularly sections 2 and 10 of such laws, rules, and regulations; that the driver was guilty of reckless driv-

ing in violation of chapter 9, article VI, section 2, of the municipal code of the village of Hemingford; that the driver was guilty of unlawfully stopping and parking in violation of chapter 9, article VI, section 5, of the municipal code of the village of Hemingford; that the equipment of the truck was defective and that in this respect the defendant was grossly, willfully, and wantonly negligent; that the defendant failed to shut off the fuel lines and failed to extinguish the flames; that the defendant operated the truck wantonly, carelessly, and negligently and in such manner as to endanger life, limb, and property; that the defendant placed the truck in a position to endanger life, limb, and property; that the defendant operated the truck without static arresters or a drag chain; that the truck carried no fire extinguishers; and that the tanks on said truck were not properly ventilated so as to prevent explosion.

By its verdict the jury found the defendant guilty of some or all of these charges.

The effect of the order sustaining the motion for new trial was to say that no actionable negligence was proved against the defendant. This was the theory on which the motion was presented and from a memorandum appearing in the transcript it becomes clear that this is the theory on which the ruling of the district court was made.

The case was tried on an amended petition which was filed on May 28, 1948, which was nearly five years from the date of the occurrence out of which this action grew. The defendant urged in the district court and urges here that at least in part this amended petition sets up a new cause of action and to that extent it is barred by the appropriate statute of limitation. In the view taken of the case it does not appear necessary to consider this question.

It is fundamental that negligence to be the basis of an action for damages must have proximately caused or contributed to the injury for which recompense is

sought. Brotherton v. Manhattan Beach Improvement Co., 48 Neb. 563, 67 N. W. 479, 58 Am. S. R. 709, 33 L. R. A. 598; Davis v. Union Pacific R. R. Co., 99 Neb. 769, 157 N. W. 964; Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117; Johnson v. Mallory, 123 Neb. 706, 243 N. W. 872; Wagner v. Watson Bros. Transfer Co., 128 Neb. 535, 259 N. W. 373; Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825; Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533; Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

Also where, in an action of tort, it is shown that, subsequent to the alleged negligent act, a new and independent cause had intervened, sufficient of itself to stand for the cause of injury, the former is too remote to be made the basis of recovery. St. Joseph & G. I. R. R. Co. v. Hedge, 44 Neb. 448, 62 N. W. 887; Kitchen v. Carter, 47 Neb. 776, 66 N. W. 855; Moses v. Mitchell, 139 Neb. 606, 298 N. W. 338; Greco v. Shaver, 141 Neb. 1, 2 N. W. 2d 526.

If original negligence is of a character which, according to the usual experience of mankind, is liable to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it and the subsequent mischief will be held to be the result of the original negligence. McClelland v. Interstate Transit Lines, 142 Neb. 439, 6 N. W. 2d 384.

A party is only answerable for the natural, probable, reasonable, and proximate consequences of his acts; and where some new efficient cause intervenes, not set in motion by him, and not connected with but independent of his acts and not flowing therefrom, and not reasonably in the nature of things to be contemplated or foreseen by him, and produced the injury, it is the dominant cause. Kitchen v. Carter, *supra*.

Under the principles announced the district court concluded that there was no evidence upon which a finding could be based that the defendant was guilty of negli-

gence which was the proximate cause of the injuries and death of plaintiff's decedent.

If the defendant was negligent it is certain that no negligence of which it was guilty was active at the time plaintiff's decedent was injured. What the defendant had done which contributed to or caused the fire had been done before plaintiff's decedent came upon the scene. The fire was in progress as was observable by all. The only thing suggested by the pleadings or evidence which could be regarded as active negligence at that time was failure to have the gasoline tank which exploded and caused the injuries properly vented. The only evidence of probative value on this subject was furnished by the employee of the defendant, and he testified that the cap to the tank contained the ordinary vent.

If then there was evidence that it was guilty of any negligence at all, and we think there was, it becomes necessary to say whether or not that negligence was too remote to be made the basis of a recovery in the action. We think on the evidence as it appears in the bill of exceptions the pertinent parts of which are summarized herein that it was too remote.

The negligent acts of the defendant were in the past and what remained was a condition of danger obviously observed, but of course not fully appreciated, by and known to plaintiff's decedent into which he projected himself, laudably of course. He acted for the clear voluntary purpose of protecting life and property from, not an act at the time, but a condition known by him to exist.

It is difficult to see how it may be said that the projection of plaintiff's decedent as he did into this happening could be regarded as a natural, probable, reasonable, and proximate consequence of the start of the fire, whatever its cause, or the removal of the truck from the Farmers Association plant. It appears reasonable to say that here were new and efficient acts of intervention

independent of the acts of the defendant, not connected with the acts of the defendant, and not reasonably in the nature of things to be contemplated or foreseen.

If this is the proper attitude to be taken, and we think it is, it must be said that whatever, if any, negligence of which the defendant was guilty was not the proximate cause of the injury and death which is the basis of this cause of action, and in consequence it must be said, subject to the conclusion upon the proposition which follows, that the district court properly sustained the motion for new trial.

It is interpolated here that it is in the light of this conclusion that the complaint of the defendant that the amended petition sets up a new cause of action which is barred by the statute of limitation loses its importance. If the plaintiff may not recover because of failure to prove negligence which was the proximate cause of the occurrence it is of no consequence whether the petition was properly or improperly amended.

The plaintiff contends that the question of whether or not there was an intervening cause which removed the negligence of the defendant as the proximate cause of the death of plaintiff's decedent was one for the jury. Such was the pronouncement of this court in the following cases: St. Joseph & G. I. R. R. Co. v. Hedge, *supra;* Omaha St. Ry. Co. v. Larson, 70 Neb. 591, 97 N. W. 824; Amend v. Lincoln & N. W. R. R. Co., 91 Neb. 1, 135 N. W. 235.

In the opinion in St. Joseph & G. I. R. R. Co. v. Hedge, *supra,* it was said: "Whether the natural connection of events is maintained or broken by the intervention of a new and independent cause is, according to the authorities cited, a question of fact."

In the syllabus it is said: "Whether the natural connection of events is maintained or interrupted by the introduction of a new and independent cause is usually a question of fact and not of law."

In Omaha St. Ry. Co. v. Larson, *supra,* it is said: "The

petition is framed in accordance with this doctrine and, in our view, states a good cause of action, and whether or not the failure to use diligence in stopping the car after the collision was the direct cause of the injury, was a question of fact to be determined by the jury."

The opinion in Amend v. Lincoln & N. W. R. R. Co., *supra*, quotes with approval what has been quoted herein from St. Joseph & G. I. R. R. Co. v. Hedge, *supra*.

We have no hesitancy in accepting these pronouncements as controlling where the facts in such situations as this are sufficiently in dispute to permit of a difference of opinion in the minds of men possessed of ordinary understanding, but we are unwilling to accept them in cases where the factual situation is so clear that reasonable minds may not differ thereon.

In situations such as this as in other situations where it has been announced, we think the following rule should apply: "Where the evidence on the trial in the district court is not conflicting, and reasonable minds cannot differ as to the conclusion to be derived therefrom, it is the duty of the court, when requested, to direct a verdict in accordance with such conclusion." Nebraska Transfer Co. v. Chicago, B. & Q. R. R. Co., 90 Neb. 488, 134 N. W. 163. See, also, Swanback v. Sovereign Camp, W. O. W., 103 Neb. 34, 170 N. W. 354.

It is true that a motion for directed verdict was not made but a motion for dismissal was made on the ground that the evidence did not sustain a cause of action. This brings the case within section 25-1315.02, R. R. S. 1943.

A motion to dismiss on the ground that the evidence does not sustain a cause of action for all practical purposes is the same as a motion for directed verdict and this court has uniformly so treated it. Meyer v. Platt, 137 Neb. 714, 291 N. W. 86; Robinson v. Central Neb. Public Power & Irrigation District, 146 Neb. 534, 20 N. W. 2d 509; Fentress v. Co-Operative Refinery Assn., *supra;* Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491;

Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607.

We conclude under this reasoning that the motion to dismiss should have been sustained the same as if a motion for a directed verdict had been made agreeable to the terms of section 25-1315.02, R. R. S. 1943.

It follows that the court did not err in setting aside the verdict but it did err in granting the defendant a new trial.

To the extent of the error the order of the district court is reversed. It is otherwise affirmed.

Pursuant therefore to section 25-1315.03, R. R. S. 1943, which provides in part as follows: "The Supreme Court on appeal from an order granting a new trial, or upon a review of an order denying a new trial in the action in which such motion was made, or on appeal from the judgment, may order and direct judgment to be entered in favor of the party who was entitled to such judgment," this cause is remanded with directions to render judgment notwithstanding the verdict in favor of the defendant.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

CHAPPELL, J., concurs in the result.

MESSMORE, J., participating on briefs.