MARION F. MCCLELLAND, APPELLEE, V. INTERSTATE TRANSIT LINES, APPELLANT.

6 N. W. (2d) 384

FILED NOVEMBER 27, 1942. No. 31418.

440

*George C. Holdrege, William J. Schall* and *T. F. Hamer,* for appellant.

*Kelsey & Kelsey, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ., and ELLIS, District Judge.

ELLIS, District Judge.

This is a personal injury action which has once before been before this court. At the first trial the plaintiff recovered a verdict and judgment thereon was reversed "for errors in the instructions" and the cause remanded for a new trial. 139 Neb. 146, 296 N. W. 757.

Upon retrial the plaintiff again recovered a verdict and from judgment thereon the defendant has appealed. Upon the second trial much of the evidence was put in by stipulation and it may be said that the facts as set forth in the opinion above referred to are substantially reflected in the record now before us. Reference is made to the former opinion for a statement of facts and for summary

of pleadings. With reference to the latter it may be said that in substance the plaintiff alleged negligence on the part of the defendant in parking its buses on the pavement, in creating a blockade of the two south lanes of the highway, and in giving the signals which caused plaintiff to bring his car to a practical stop, with the result that plaintiff's car was struck from behind by the Ford and was thrown into the rear bus, producing the injuries for which plaintiff sought recovery.

The defendant's answer, after denial of negligence on its part, alleged that the accident was caused by negligence of the plaintiff and of the driver of the Ford.

The defendant makes no complaint as to trial, the amount of the verdict or the instructions upon which the cause was submitted. With reference to the latter, it is apparent that they recognized every theory of the defendant. Plaintiff, having recovered a verdict, makes no complaint.

The only assignments of error by the defendant go to the sufficiency of the evidence to sustain the jury's finding of negligence on the part of defendant's servants, which was the proximate cause of the injury, and a contention that the plaintiff was guilty of negligence which as a matter of law precluded his recovery.

With reference to the latter contention we are convinced that it cannot be sustained. Under the comparative negligence statute evidence of some negligence on the part of a plaintiff does not necessarily bar recovery. The trial court submitted defendant's contention of contributory negligence. In the light of the evidence we think that this was an issue for the jury. We are convinced that there is utterly no basis for a direction against the plaintiff on the ground of contributory negligence. The evidentiary basis for what immediately precedes will appear in the course of the discussion which follows.

This accident occurred on a pleasant July Sunday afternoon at a point between the two entrances to Boys Town on a four-lane highway (No. 275) of this state, obviously

engineered and constructed to accommodate a large volume of swift moving traffic, and the defendant says at the time "there was a large amount of travel on this highway."

The angle of the east entrance driveway to Boys Town with the highway from the west was an acute angle of less than 45 degrees, so that a vehicle of the length of those being operated by the defendant could not approach said entrance from the west and enter Boys Town by the simple operation of turning off the highway to the right, but involved the necessity of a wide swing out in the current of traffic on the highway and the possible necessity of stopping, backing up and then proceeding again. To the west of the point of this operation, about 500 feet, was the crest of a hill.

Having approached from the east and entered Boys Town by the east entrance only a short time before and thus having actual and fresh knowledge of all the above stated facts, the defendant undertook to move four buses, 33 feet in length, in a concerted movement out of Boys Town from the west entrance onto this highway and from it back into the Town via the east entrance. Numbering the buses from 1 to 4 in their order in the procession, bus No. 1 failed to negotiate the turn due to some low hanging equipment not clearing, with the result that it had to stop, back up and then proceed. That this was not unanticipated is indicated by the testimony of the driver who testified: "Well I turned from the right-hand lane up into the driveway knowing I would have to back up, and the back end caught, which we more or less anticipated with this air-conditioned bus and I just backed up enough to release it." While this bus was in trouble and blocking both south lanes, bus No. 2 proceeded to swing wide to the north so that it occupied both east-bound lanes and extended over beyond the center line of this 40-foot highway.

Referring to this situation and as it appeared to the driver of bus No. 4, the defendant says: "The *two* south

or east-bound lanes were *blocked* by one bus which stood *completely* across them, and that a second bus, occupying part of *both* said lanes, was *with each moment* getting further *into the inner lane* as it swung wide to make the turn as required in leaving the highway from the west." (Italics ours.)

The defendant also says: "McClelland (plaintiff) was faced with a *complete* blockade, composed of buses on one side of the highway, and two west-bound cars on the other. The situation *compelled* some action on the part of the bus driver to warn McClelland and others approaching from the rear that *caution* in proceeding was needed." (Italics ours.) We pause to point out here that this situation, which the defendant accurately and graphically describes, was created solely by the acts of its agents and that the compulsion in the situation sprang from its own conduct.

As the plaintiff approached from the west at a very moderate rate of speed and before reaching the crest of the hill, he observed the top of bus No. 4 above the driving lane space. He moved from the driving lane over into the passing lane which was provided so that vehicles might pass slow moving or even stopped vehicles in the driving lane. As he came over the crest of the hill, he was suddenly confronted with the situation described above. At this moment the driver of bus No. 4, prompted by the apparent danger of the blockade *created by his fellow drivers,* began to wave his arm slowly up and down. The plaintiff responded at once to this signal by slackening his speed, which demonstrated that he was alert and watching ahead. This "slow" signal was followed by a violent up and down motion of the driver's arm and blowing of his horn. This was interpreted by plaintiff as a "stop" signal, to which he responded by bringing his car to a practical stop (about three miles an hour) well away from bus No. 4 which was the nearest object in his path. This demonstrates that plaintiff had his car under perfect control.

At this moment plaintiff's car was struck from behind by a Ford which the defendant thinks was traveling at least 60 miles an hour. The defendant contends that plaintiff was negligent in not giving an arm signal of his intention to move from the driving lane into the passing lane. Since plaintiff completed this movement *safely* and had traveled some distance in the passing lane, we think it immaterial that he gave no such signal. There is no evidence that his omission in this respect had anything whatever to do with the subsequent collision. The defendant also contends that plaintiff was negligent in not giving an arm signal of intention to decrease his speed and stop. Considering the suddenness with which the plaintiff was confronted with the situation created by the defendant and the further fact that his attention was demanded by the signals being given by defendant's agent, we think he was entitled to have his conduct measured by the emergency or sudden peril rule referred to later. The foregoing indicates the basis of our conviction that the defendant was not entitled to any more on the score of plaintiff's negligence than to have the issue submitted to the jury.

It also appears from the evidence that from the point where the signaling driver caused plaintiff to stop, the passing lane was clear for a distance of something more than 250 feet to the point where the nearer of the two buses forming the blockade stood. The plaintiff contends that had it not been for the defendant's stop signal the plaintiff could have proceeded slowly for a considerable distance and thus afforded an opportunity for all parties to avoid any collision. Likewise, the Ford might have been afforded a substantial distance in which to maneuver, substantially reduce its speed, or even stop.

In the light of these facts we turn now to principles of law.

"Users of the highway are required to exercise reasonable care. What is reasonable care must in each case be determined by its own peculiar facts and circumstances." *Lammers v. Carstensen*, 109 Neb. 475, 191 N. W. 670.

"Acts that might be considered prudent in one case may be deemed to be negligent in another." 20 R. C. L. 9, sec. 7. "The surrounding facts and circumstances are of controlling importance. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be negligence. Negligence is essentially relative and comparative." 20 R. C. L. 24, sec. 18.

Negligence is the absence of care according to the circumstances.

"Negligence is the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do." *McGraw v. Chicago, R. I. & P. R. Co.,* 59 Neb. 397, 81 N. W. 306.

"Thus, it is to be seen that the rule is: 'Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person, rightfully there, will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises; and, if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist, in the absence of any other controlling element or fact, and this, too, without regard to the legal relationship of the parties.' *Lisle v. Anderson,* 61 Okla. 68, 159 Pac. 278." *Zimmer v. Brandon,* 134 Neb. 311, 278 N. W. 502.

"It suffices to charge a person with liability for a negligent act if some injury to another ought reasonably to have been foreseen as the probable result thereof by the ordinarily intelligent and prudent person under the same circumstances, even though the specific injury might not be foreseeable." *Meyer v. Milwaukee E. R. & L. Co.,* 116 Wis. 336, 93 N. W. 6. "It is not essential that the negligence should be the direct cause of the injury. It suffices that it is the natural and probable cause. It is the natural

cause when either it acts directly in producing the injury, or sets in motion other causes so producing it and forming a continuous chain in natural sequence down to the injury; thus linking the negligence with the injury by a chain of natural and consequential causation,' although the former may be neither the immediate nor the direct cause of the event." *Meyer v. Milwaukee E. R. & L. Co., supra.*

"The true rule, as we understand it, does not require that the defendant must have been able to foresee the precise injury which in fact resulted from the accident, or the particular, injurious result which might be inflicted upon person or property as the result thereof; on the other hand, the law only requires that he shall be able to understand and appreciate that results of some kind of injurious nature may be reasonably anticipated from the negligent act of omission or commission." *Burkland v. Oregon Short Line R. Co.*, 56 Idaho, 703, 58 Pac. (2d) 773.

"Whether or not an act of negligence is the proximate cause of an injury is determined by ascertaining whether or not, in the natural and continuous sequence of events, there was a causal connection between such negligence and the injury, without some efficient independent cause * * * that was disconnected from such negligence and self-operating, intervening to produce the injury. * * *

"The doer of an original wrongful act that should reasonably cause one to anticipate an injury therefrom is not relieved from liability for an injury immediately brought about by an intervening cause, wrongful or otherwise, that is set into operation by such original wrongful act, and that alone would not have caused the injury, but which with the aid of the original wrong does cause such injury." *Johnson v. Mallory*, 123 Neb. 706, 243 N. W. 872.

The case of *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb. 448, 62 N. W. 887, presented a difficult question of proximate cause and with reference to it the court said: "The question in all such cases is whether the facts shown constitute a continuous succession of events so linked together as to make a natural whole, or was there a new and in-

dependent cause intervening between the wrong and the injury. The intervening cause must be one not produced by the alleged wrongful act or omission, but independent of it, and adequate to produce the result in question. There may be, it is evident, a succession of intermediate causes, each dependent upon the one preceding it and all so connected with the primary cause as to be in legal contemplation the proximate result thereof. *ʹ * * Whether the natural connection of events is maintained or broken by the intervention of a new and independent cause is, according to the authorities cited, a question of fact."

"Otherwise stated, if the original negligence is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result of the original negligence." 45 C. J. 933, Note 63 (a). See *St. Louis-San Francisco R. Co. v. Mills*, 3 Fed. (2d) 882; *Id.*, 271 U. S. 344, 46 S. Ct. 520.

" 'Where separate, independent acts of negligence by different persons combine to produce a single injury, each participant is liable for resulting damages, though one of them alone might not have caused the injury.' *Rogers v. Brown*, 129 Neb. 9, 260 N. W. 794." *Andrews v. Clapper*, 133 Neb. 110, 274 N. W. 209.

We think there will be no quarrel with the principles above stated and that they are all applicable to the case before us.

The case of *Paup v. American Telephone & Telegraph Co.*, 124 Neb. 550, 247 N. W. 411, is in point and involves some similarity of facts. In that case the court stated the rule of proximate cause as ʹ follows: "A tort-feasor is answerable for all the consequences that, in the natural course of events, flow from his unlawful or negligent acts, although those results are brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrong-doer, or were the natural consequences of his orginal wrongful act."

With this situation before it the trial court withdrew from the consideration of the jury all charges of negligence made by the plaintiff except the one that defendant's agent was negligent in giving the signals which caused plaintiff to bring his car to a stop. More than this, the trial court gave the following instruction: "You are instructed that every automobile or bus, while in use on the public highways of this state during the daytime, has a right to stop upon the highway as long as they are visible, for a reasonable distance to an approaching vehicle, and in this case, the evidence shows that the buses of the defendant were visible for a reasonable distance to an approaching vehicle; and the fact that they were stopped upon the highway, as shown in the evidence, must not be considered by you as negligence on the part of the defendant."

Since buses Nos. 1 and 2 appear to have been in motion at the time of the collision, it is not clear whether the instruction applied to all four buses or only to Nos. 3 and 4. We pause here to express the view that the instruction was not justified by either the law or the facts. Section 39-1154, Comp. St. Supp. 1941, provides: "No person shall park or leave standing any vehicle * * * upon the paved or improved or main traveled portion of any highway * * * when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway * * *." See, also, Comp. St. Supp. 1941, secs. 39-11,112 and 39-11,113. The record is silent as to the condition of the shoulders of the highway except that the driver of bus No. 1 testified that, after freeing his bus, he drove it off the highway and parked it on the shoulder. The question of negligence in parking the buses and compliance with the applicable statutes ought not to have been foreclosed as it was.

The instructions given by the trial court are the law of the case, even though they erroneously state the law itself. We must assume that juries apply the law as given in the instructions. To do otherwise would imply recog-

nition of verdicts based upon refusal to apply the law as stated in the court's instructions. Such verdicts, even though thought to be basicly correct, would none the less be verdicts against the law because unlawfully arrived at. Thus, in this case, we must assume that in response to the limitations of the court's instructions the jury limited its consideration of negligence on the part of the defendant's agents to the single issue of whether or not the acts of the driver of bus No. 4 in giving the signals constituted negligence. This presents squarely to this court the question of whether, as limited, the finding of the jury against the defendant can be sustained. The problem has caused us no inconsiderable amount of concern. We are reluctant to set aside this second verdict obtained by the plaintiff, but after repeated consultations have come to the conclusion that that must be the judgment of the court.

In view of the manner of submission, we are persuaded that, standing alone and removed from the background of the antecedent conduct of defendant's agents, the conduct of the one agent in giving the signals does not constitute a lawful basis for the verdict.

It will be apparent that, if the defendant was not negligent in blocking the highway, the standard for measuring the conduct in giving warning is entirely different from that to be applied if the defendant was negligent in creating the situation which prompted the giving of the signals.

Taking into account the character and condition of the highway, the day with its effect upon volume of traffic, the topography, the known difficulty of negotiating the turn from the west into the east entrance of the Town, the acknowledged anticipation of trouble in moving bus No. 1 because of low hanging equipment, the danger of blocking the passing lane at any time, and all the other facts and circumstances shown, we think the charges of negligence in blocking the highway should have been submitted to the jury, together with the question of whether under these circumstances the defendant's agent was negligent in the manner of giving the signals.

We have considered the cases cited by the defendant, including the case of *Steenbock v. Omaha Country Club,* 110 Neb. 794, 195 N. W. 117, as precedents for direction against the plaintiff. We think the facts serve to distinguish these cases from the principal case and that the principles therein applied are not applicable in the situation before us.

We think it desirable also to note the contention of the defendant that the emergency or sudden peril rule should be applied to relieve defendant from liability. In the first place this rule is not ordinarily considered or applied as an ultimate test to determine whether conduct is negligent or not. There are cases in which the courts have said that because of the time element involved the defendant was not negligent as a matter of law. As we view these cases, they do not involve so much an application of this rule as they do the basic rule that, where the minds of reasonable men could not differ on the issue of negligence, then the decision is for the court. The more general application of the emergency rule is that of an ancillary yardstick tempering the standard rule of due care. It was thus used by the trial court in its instructions to the jury, being limited, however, to the conduct of the defendant. Furthermore, an essential element of the rule is that the party claiming the benefit of it must not by his own negligence have created or contributed to create the emergency. See *Sheehy v. Abboud,* 126 Neb. 554, 253 N. W. 683. 1 Blashfield, Cyc. of Automobile Law and Practice (Perm. ed.) 480, sec. 669, states the qualification thus: "The rule of sudden emergency as above stated cannot be invoked by one who has brought that emergency upon himself by his own wrong or who has not used due care to avoid it." This qualification should be included in the statement of the rule.

The judgment will be reversed and the cause remanded for a new trial in accordance with the view herein expressed.

In consideration of the circumstances, the costs of this appeal will abide the result of the new trial ordered.

REVERSED.