WILLIAM A. RUMSEY, APPELLANT, V. SCHOLLMAN BROS.
CO., A CORPORATION, APPELLEE, IMPLEADED WITH DEBUSE
BROTHERS, INC., A CORPORATION, APPELLANT.

55 N. W. 2d 668

Filed November 28, 1952. No. 33189.

*Brown, Crossman, West, Barton & Quinlan,* for appellant.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages against the defendant Schollman Bros. Co. based on alleged negligence in the operation of oil-burning salamanders on a construction job. At the close of the trial the court sustained a motion of the defendant for a directed verdict and dismissed the action. Plaintiff appeals. We reverse and remand.

Carl C. Wilson, Inc. was a general contractor, constructing a multiple unit apartment house in Omaha. Schollman Bros. Co., a corporation, was a subcontractor of the plumbing installations and hereinafter is called

defendant. DeBuse Brothers, a corporation, was the subcontractor of carpenter work. Plaintiff was an employee of DeBuse Brothers. DeBuse Brothers is made a defendant for purposes of subrogation under the provisions of section 48-118, R. R. S. 1943, it having paid compensation and hospital bills.

So far as is necessary for the requirements of this opinion, we summarize the evidence in accord with the rule: A motion to dismiss or for a directed verdict admits the truth of all material and relevant evidence adduced by the party against whom the motion is made, and such party is entitled to have such evidence considered in the light most favorable to him and to have the benefit of all inferences reasonably deducible therefrom in testing the validity of the court's action in disposing of the motion. Weisenmiller v. Nestor, 153 Neb. 153, 43 N. W. 2d 568.

The apartment building consisted of a basement and two stories above ground. The plaintiff's cause of action arises as a result of events happening on March 3, 1950. The day was cold. The rooms here involved were an unfinished basement room 50 feet by 30 feet in size and similar sized apartments above on the first and second floors. Studding for partitions was in place, otherwise the basement room and the apartments were all one open space. Above the basement was the rough first floor of the apartment, the boards separated by cracks. The same type of floor was on the second floor apartment, and above that were ventilator openings in the roof. Temporary doors were in place on outside openings and kept closed, and likewise the windows were closed or covered with material to keep out the cold. The ground in the basement was frozen. Defendant was using the salamander stoves to thaw out the necessary area for digging trenches. The operation had been going on for some time.

These salamander stoves have a round tank base, for fuel and the burner, which is from 22 to 24 inches in di-

ameter. Above that is a chimney placed in the center of the base on the top of which is a canopy about the size of the chimney. The top of the salamander is five to six feet above the base. Five salamanders were in use. One of them had a smaller pipe to carry gases to the center of the chimney. Four were not so equipped. None of them were equipped with pipes to carry gases or fumes out of the room. Four, and normally all five, were burning all the time. On the day involved here all five were concentrated in a 10-foot area and about five or six feet apart. Kerosene oil was being used as a fuel. Under normal operation these salamanders gave off an odor of oil and made a buzzing sound, the amount of sound depending on the amount of air going to the burner. These particular burners required refueling once or twice a day, and whenever that was done it was also necessary to clean them and remove carbon deposits from the chimneys to secure normal operation. The evidence is that the use of salamanders is common on construction jobs, and that normally they give an odor of oil and a buzzing sound. The evidence also is that when so used it is not customary to connect them with pipes to carry fumes outside the building, and for the reason that where they require frequent moving, as these did here, it was impractical to do so. There was no notice of the use of salamanders posted in the building in question. There is evidence that such notices were never used.

On the afternoon of March 3, 1950, plaintiff, who theretofore was a man in good health, finished the work he was doing in another unit of the building and between 1:30 p. m. and 2 p. m. moved into the apartment above the basement where the group of salamanders were burning. It was the apartment next in line to be worked upon by him. He began his usual work there. He noticed the usual smell of oil and heard the usual buzzing. About 2 p. m. or shortly thereafter a foreman of defendant came into the room where plaintiff was working. He noticed a "strong odor" of oil, soot on

plaintiff's face and hands, and that plaintiff looked pale. The foreman told plaintiff, "Bill, you better get out of here. This will kill you." Plaintiff answered, "I am beginning to feel it already." The foreman then left. Plaintiff picked up his tools and went outside immediately thereafter. He felt dizzy. The next he remembers, it was 4:20 p. m., and he was then outside near a pile of lumber. He went home, ate a light supper, and went to bed. That night he had pains in his chest, the next day he had developed a fever, was having chills, and a doctor was called.

On March 7 he was taken to a hospital suffering from pneumonia. He was discharged from the hospital on March 14 and was taken home for further treatment. On March 18 the symptoms had recurred and he began to have pain in his left leg. He was taken to the hospital on March 19 where his diagnosis was pneumonia. He was discharged from the hospital on April 10. He returned to work on July 24, 1950. He was paid workmen's compensation by his employer's insurance carrier in a sum about 25 percent of his normal wages. Plaintiff incurred hospital bills which were paid in part by insurance which he carried and in large part by the insurance carrier of the plaintiff's employer. He incurred a considerable physician's bill, which it appears has not been paid. Phlebitis developed in the left leg, resulting in a permanent partial disability.

The expert evidence is that where there is incomplete combustion in burners of this character carbon monoxide is given off; that very seldom are conditions ideal for complete combustion; and that whenever carbon—soot— is produced it indicates that combustion is not complete. Carbon monoxide is odorless, tasteless, and colorless, and is lighter than air. It is extremely poisonous physiologically. One part to 1000 parts of air is injurious and fatal in half an hour and in many cases the person breathing it simply loses consciousness.

Plaintiff's attending physician, following the history

of the fumes, testified that the pneumonia was "Probably an inhalation type"; that "a marked factor in developing the pneumonia was inhalation of the fumes * * * The time element fits in * * * that was the probable cause and possibly was the cause * * * I don't think I could say it was * * * it would look to me like the inhalation was a big factor in the development of it."

As to the phlebitis the evidence is that "anything that retards the blood flow like a person being in bed could be a causative factor * * * being in the hospital and being off his feet could have something to do with it * * * immobility * * * could have been a factor * * *."

Plaintiff pleads that defendant was negligent in three particulars: "(a). In operating five oil burning salamanders within a confined space without giving the plaintiff adequate warning of the operation and presence of said salamanders when the plaintiff entered said apartment in said building. (b). In failing to provide each of said salamanders with an exhaust pipe to carry the noxious gases and fumes from said salamanders outside the building and into the open air. (c). In failing to assist plaintiff from his place of peril when it recognized, or should have recognized the dangerous situation created by said defendant, in which the plaintiff was inhaling noxious gases and fumes given off by said salamanders."

Defendant's motion for an instructed verdict was that the evidence failed to establish negligence on its part; that it established contributory negligence more than slight on the part of the plaintiff; and that it failed to establish that the pneumonia was caused by any negligence on its part.

The initial question presented is what is the duty owing by defendant, a subcontractor, to the employee of another subcontractor under the situation that existed on this construction job.

The rule appears to be well established that "Where two or more independent contractors, or a general con-

tractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor; and an employee of one contractor may recover against another contractor for injuries caused by the negligence of the latter contractor, or of his employees acting within the scope of their employment, in the performance of a duty owed by such contractor to the injured employee." 57 C. J. S., Master and Servant, § 610, p. 382. See, also, Annotation, 38 A. L. R. 471.

Defendant argues here that salamanders are commonly used on construction jobs, such as the one here; that they were in use on this job; that warning signs of their use are never posted; that it is not customary to connect the salamanders with outside vents except in cases of something in the nature of a permanent installation; that plaintiff knew of their use on this job; that when he entered the room here he recognized the odor and noise of the salamanders and had notice of their use at this particular time; that he remained in the room for some time after he knew the ill effects produced and knew or must have known of soot on his hands and face; and that he assumed the risk and was guilty of contributory negligence sufficient to bar recovery. A part of defendant's argument here is based on conclusions from conflicting evidence.

All of this argument misses the crucial fact of this case. Here there was a concentration of five of these salamanders in one closed room. The evidence is ample to sustain a finding that there was incomplete combustion; that carbon monoxide gas was being manufactured by them and other substances such as carbon being thrown off; that carbon monoxide gas is extremely poisonous; that it is odorless, tasteless, colorless, and lighter than air; and that its obvious escape was upward to the room above where plaintiff was working. Those are the

facts upon which plaintiff predicates his action. The defenses advanced by defendant do not meet that situation.

The care necessary to avoid injury or harm must be commensurate with the danger of harm involved in the particular case. 38 Am. Jur., Negligence, § 29, p. 673; 65 C. J. S., Negligence, § 64, p. 555. The evidence here presents, at least, a jury question as to whether or not the defendant exercised the care required under the circumstances of this case.

It also is a jury question, at least, as to whether or not defendant was guilty of contributory negligence under the circumstances admitted to be true by the motion in this case.

Finally defendants contend that the evidence was insufficient to show that the pneumonia was caused by the inhalation of carbon monoxide gas and other matter released by the salamanders. This is directed particularly at the testimony of plaintiff's expert witness. We have heretofore set out the evidence as to plaintiff's good health immediately before his entry into this room. We have also set out his appearance and condition thereafter and the development of this disease. We deem the evidence sufficient to sustain a conclusion of cause and effect. See, Koran v. Cudahy Packing Co., 100 Neb. 693, 161 N. W. 245; Adams v. Lilbourn Grain Co., 226 Mo. App. 1030, 48 S. W. 2d 147.

We do not determine the sufficiency of the evidence to show that plaintiff's phlebitis was the result of the acts of the defendant. That is not argued here. The right of plaintiff to have this cause submitted to a jury does not turn on that question.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.