ROBERT W. HOFFMAN, APPELLANT, v. JORGENSEN AWNINGS, INC., A CORPORATION, ET AL., APPELLEES.
132 N. W. 2d 867

Filed February 5, 1965. No. 35811.

Swenson, Erickson & Nelson, for appellant.

Cassem, Tierney, Adams & Henatsch, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is an action for damages for personal injuries to a passenger in an automobile which went off the road in passing defendants' truck and struck a driveway and culvert. There was no physical contact between the automobile and the truck. At the conclusion of the evidence, the district court sustained defendants' motion for a directed verdict and the plaintiff has appealed.

The questions presented involve the sufficiency of evidence of the defendants' negligence; whether defendants' negligence, if any, was the proximate cause of the accident; and whether the plaintiff is chargeable with contributory negligence.

The accident occurred on Bellevue Boulevard in suburban Omaha in midafternoon of a dry, clear day in June 1961. Plaintiff Hoffman was a passenger in an automobile driven by George C. Belek, Jr. The truck of defendant Jorgensen Awnings, Inc., was driven by defendant, James Kay, an employee acting in the course of his employment. Both vehicles were proceeding south on Bellevue Boulevard, the asphalt surface of which varies in width from 20 to 22 feet at the points in question, with a sloping shoulder and drainage ditch along the east side. While there is a slight curve some distance north, the street is fairly straight and almost level in the area of the accident, and there was no other traffic involved. The truck was a 1949 Diamond T pickup and carried two extension ladders in 4 sections, extending from the front to the rear of the pickup. The ladders extended approximately 12 inches from the body of the

truck on the driver's side and were mounted at the height of the driver's window. The pickup was not equipped with directional signals. At a point north of a private driveway on the east side of the street described as the Madsen driveway, the car was behind the truck and the plaintiff told Belek to go ahead and pass the truck if the road was clear. Belek found no on-coming traffic; pulled left into the passing lane; started around the truck; went across a portion of the Madsen driveway, down along the east shoulder and drainage ditch; and struck a driveway and culvert at the Cole driveway which was 78 feet south of the middle of the Madsen driveway. Plaintiff's injuries resulted from this collision. When Belek was commencing to pass, the truck was moving 5 to 10 miles per hour. Belek did not sound his horn. Defendant Kay, the driver of the truck, was intending to turn left into the Madsen driveway. The speed limit on Bellevue Boulevard at this point was 35 miles per hour.

There is a sharp conflict in the evidence as to what occurred immediately prior to and during the time Belek was in the process of passing. Defendant driver and another employee in the truck both testified that the driver of the truck gave a left-turn signal for 75 to 100 feet before reaching the Madsen driveway by extending his left arm through the ladders. Defendant Kay estimated that his hand extended about 10 inches past the ladders. He testified he first saw the car driven by Belek when it was approximately 16 feet behind him and rapidly overtaking him. When he saw it, he immediately put on his brakes and stopped the truck. He says he had not started to turn and that no portion of the truck was across the centerline when he came to a stop, approximately 4 or 5 feet north of the Madsen driveway. The two employees in the truck testified that the Belek car was going 45 to 50 miles an hour when it passed them. There was testimony that the wheels of the Belek car were spinning as it went along the ditch, with its front end toward the road and its back end in

the ditch, and that it then headed into the culvert.

Belek, the driver of the car, the plaintiff, and another passenger, James Hurt, all of whom were riding in the front seat, testified that the car had followed the truck for some distance at a speed of around 15 to 20 miles per hour; that the truck had made no unusual movements prior to their commencing to pass; that none of them had seen any left-turn signal; that while they were in the act of passing, the truck turned left into their lane of traffic and had moved over into the left lane 2 to 4 feet when the automobile reached the edge of the Madsen driveway; and that Belek went to the left and off the road to keep from hitting the truck. Belek testified that when he started to pass he shifted into second gear; that when he pulled to the left to avoid the truck he did not put on his brakes; that he went along the ditch without putting on brakes or throttle; that he was trying to steer out of the ditch; and that the car seemed to be coming out, but then the front end slid back down into the ditch, and struck the driveway and culvert at a speed of 15 to 20 miles an hour.

A motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. This principle is well settled in this court. It is clear that the defendant driver intended to turn to the left into the Madsen driveway, although defendants contend he had taken no action to accomplish it. A left-hand turn across a public highway between intersections is fraught with danger and one making such a movement is required to exercise a degree of care commensurate with the danger. Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d 355.

Section 39-7,115, R. S. Supp., 1961, provided in part:

"No person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety * * * and after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement; * * *." Where such a driver looks but does not see an approaching motor vehicle, or sees the approaching vehicle and erroneously misjudges its speed or distance, or for some other reason assumes he could safely complete the movement, the question of negligence is usually for the jury. Petersen v. Schneider, *supra.* There is ample evidence on which the jury might have found that the defendant driver was making a left turn between intersections without giving an appropriate signal. The testimony is sharply in conflict and the conclusions to be drawn from, and the appropriate weight to be given to, such testimony and any proper inferences therefrom are clearly questions within the province of the jury.

The defendants contend the accident was caused solely by the negligence of Belek, the driver of the car in which the plaintiff was riding, and that any alleged negligence on the part of the defendant driver was not the proximate cause of the injuries to the plaintiff.

Apparently the defendants' position is that Belek's negligence was an intervening force operating independently of any situation created by the negligence of defendant driver. Actions of Belek which were a normal response to the stimulus of a situation created by the negligent conduct of defendant driver are not a superseding cause of harm to the plaintiff, which the conduct of defendant driver was a substantial factor in bringing about. Restatement, Torts, § 443, p. 1189.

The comment on this section of Restatement at page 1190 is also enlightening. It reads in part as follows: "It is not necessary that an act which is done by the person harmed or by a third person should be 'reasonable'; that is, that the act should be one which a rea-

sonable man would regard as not involving an unreasonable risk to himself or others. It is enough that the act is a normal response to the stimulus of the situation created by the actor's negligence. * * * The word 'normal' is used as the opposite of 'highly extraordinary' and not in its more customary sense of 'standard' or 'usual.' It denotes the fact that the court or jury looking at the matter after the event and therefore knowing the situation which existed when the intervening act was done, including the character of the persons or animals subjected to the stimulus of the situation, does not regard its intervention or the effect thereof as extraordinary. In order that the reaction of human beings to the stimulus of a situation should be normal it is not necessary that the situation should be such as to make it justifiable or reasonable."

The case of Stenson v. Schumacher, 234 Wis. 19, 290 N. W. 285, is very much in point. In that case, a truck turned left in an intersection without giving a signal, and the driver of the automobile preparing to pass lost control of his car, traveled along a ditch, and collided with a culvert. Plaintiff was a passenger in the car. The court held that although the driver of the car was guilty of negligence as a matter of law, the negligence of the truck driver was a cause of the plaintiff's injury, and reversed the part of the judgment dismissing plaintiff's complaint as to the truck driver.

There is insufficient evidence to establish any joint enterprise between the plaintiff and Belek, and the negligence of the driver is ordinarily not imputed to the guest. Kleinknecht v. McNulty, 169 Neb. 470, 100 N. W. 2d 77; Pearson v. Schuler, 172 Neb. 353, 109 N. W. 2d 537.

Upon the conclusions reached, this case should have been submitted to the jury.

The judgment of the district court is reversed and the cause remanded for further proceedings in conformity with the opinion herein.

REVERSED AND REMANDED.