**Donald E. LEISTRA, Appellant,**

v.

**BUCYRUS–ERIE COMPANY, Appellee.**

**No. 20227.**

United States Court of Appeals, Eighth Circuit.

May 25, 1971.

Rehearing En Banc Denied July 20, 1971.

Rehearing Denied July 20, 1971.

Lay, Circuit Judge, dissented.

Daniel G. Dolan, Lathrop, Albracht & Dolan, Omaha, Neb., for appellant.

Joseph H. McGroarty, McGroarty & Welch, Omaha, Neb., for appellee.

Before MATTHES, Chief Judge, LAY, and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Donald Leistra, as plaintiff, brought this diversity action under Nebraska law to recover for injuries he sustained in an industrial accident. He attributed his injuries to negligence in the design of a large crawler-type crane, manufactured by Bucyrus-Erie Company, about which he worked as an employee of building contractor Peter Kiewit Sons Company of Omaha, Nebraska. A jury awarded Leistra $70,000 in damages, but the federal district court, Judge Robinson presiding, granted defendant Bucyrus-Erie judgment notwithstanding the verdict. Leistra brings this timely appeal. We agree with the district court's decision that Leistra, as a matter of law, established no proper basis for a claim against Bucyrus-Erie.

The facts surrounding the accident are not in dispute. Leistra served as an oiler or assistant to the operator of the fifty-ton load capacity Bucyrus-Erie 30–B Series Three Supercrane. On April 22, 1966, the crane was being used to lift and transport freshly-made concrete from truck mixers to the top of a bridge under construction. The operator of the crane, Donald Cronkhite, after moving the machine from one location to another at the bridge site, discovered that a portion of the steel cable used to raise and lower the load had spilled out beyond the confines of its drum, the front drum, and had become wedged between the drum and an adjacent circular chain called the power-down chain. The power-down chain and its sprocket operate as a brake in controlling the downward movement

of the load. Apparently, the movement of the crane caused the cable to unwind and jump over the drum flange. This, in turn, prevented the ball and hook at the end of the boom from being lowered to pick up another load.

The front drum and power-down unit are housed in a recessed compartment at the center-front of the cab and above the machinery deck. Though recessed, the unit is, nevertheless, unshielded at its exterior part. It is thus accessible to contact by a person located at or near this point. This site, at which the accident occurred, is illustrated in the following photograph and legend.

[Plaintiff's Exhibit 4]

[A4018]

Operator Cronkhite called Leistra's attention to the wedged cable. Leistra climbed onto the machine and first attempted to free the cable by hand. When this effort failed, he tried to dislodge the cable by prying it with a crowbar. During these efforts, the master clutch which transfers power from the engine to the front drum was disengaged. When Leistra was unable to pry the cable free, Cronkhite advised plaintiff that he would assist him by moving the drum slightly back and forth. As Leistra continued his attempts to pry the cable from the chain, Cronkhite engaged the master clutch, rotating the drum twice back and forth. With this additional force, the power-down chain snapped and struck Leistra in the face, causing his injuries, including the loss of an eye.

Leistra brought suit against Bucyrus-Erie Company, claiming negligent design and manufacture of the crane in two respects: (1) failure to install a small metal shield, called a rope-guard, which allegedly permitted the cable to become wedged; and (2) failure to provide a shield over the power-down unit, which allegedly permitted the broken chain to hit plaintiff. The district court rejected the jury award on the basis that the plaintiff failed, as a matter of law, to establish that any such negligence on the part of Bucyrus-Erie caused his injuries. The court stated, in part:

> The problem that is bothersome to the Court is the matter of causation, whether it be termed as a duty owed, proximate cause, foreseeability or a superseding intervening cause. Choosing first to speak mainly in terms of a superseding intervening cause, the Court believes, and so holds, that some conduct by either the plaintiff, other employees, or his employer, or a combination thereof, superseded any pre-existing negligence on the part of the defendant thereby relieving defendant of liability.

■ We shall likewise consider the matter of causation, mindful, however, that such consideration requires an examination of aspects of negligence, fore-seeability and duty. See Schneider v. Chrysler Motors Corp., 401 F.2d 549, 557 (8th Cir. 1968); Restatement (Second) of Torts § 281, comment h. For a general discussion, see Annot., 100 A.L.R.2d 942 (1965). We, of course, construe the evidence most favorably for the plaintiff, who obtained the jury verdict. See *Schneider, supra*, 401 F.2d at 555; Chicago, Burlington & Quincy R.R. v. Beninger, 373 F.2d 854, 856 (8th Cir. 1967).

Although a rope-guard was not present on the crane at the time of the accident, no evidence of probative force suggests that its absence is chargeable to Bucyrus-Erie. Cf. Smith v. Hobart Manufacturing Co., 302 F.2d 570 (3d Cir. 1962); Tomicich v. Western-Knapp Engineering Co., 423 F.2d 410 (9th Cir. 1970). On the contrary, the manufacturer's records disclosed that such a guard, which was designed to prevent loose cable from spilling over the drum flange and contacting the power-down unit had been specially manufactured and installed on this particular crane prior to its leaving the factory. Moreover, plaintiff's expert witness testified that a rope-guard will not always prevent the cable from jumping over the flange of the drum. On the basis of this evidence, we cannot attribute the crane's malfunction, which was caused by entanglement of the cable and the power-down chain, to any negligent conduct on the part of Bucyrus-Erie. Plaintiff's claim for recovery must, therefore, rest solely upon the manufacturer's failure to provide a shield over the power-down unit.

Upon reviewing the evidence on this issue, we conclude, as did the district court, that any negligence on the part of Bucyrus-Erie did not operate as a legal cause of plaintiff's injuries. In so holding, we rely in part upon the rules of the Restatement of Torts, Second. The Nebraska Supreme Court has often cited the Restatement with approval in considering causation. See Landmesser v. Ahlberg, 184 Neb. 182, 166 N.W.2d 124, 127 (1969); Hoffman v. Jorgensen Awn-

ings, Inc., 178 Neb. 261, 132 N.W.2d 867, 870 (1965). We also have utilized the Restatement in resolving similar issues arising under Nebraska law. See *Schneider, supra*, 401 F.2d at 558.

Section 281 of the Restatement of Torts, Second, sets forth the elements of a cause of action for negligence. The following comment and illustration from that section apply to the facts of this case:

> *f. Harm beyond the risk.* Where the harm which in fact results is caused by the intervention of factors or forces which form no part of the recognizable risk involved in the actor's conduct, the actor is ordinarily not liable. This is subject, however, to the qualification that where the harm which has resulted was itself within the risk created, the fact that it has been brought about in a manner which was not to be expected, or by the intervention of forces which were not within the risk, does not necessarily prevent the actor's liability.
>
> \* \* \*

Illustration:

> 3. A gives a loaded pistol to B, a boy of eight, to carry to C. In handing the pistol to C the boy drops it, injuring the bare foot of D, his comrade. The fall discharges the pistol, wounding C. A is subject to liability to C, but not to D.

Thus, for Bucyrus-Erie to be liable for plaintiff's injuries, the resulting harm must be within the recognizable risk, if any, created by Bucyrus-Erie. Appellant charges the manufacturer with failing "to guard the power-down chain." He fails to distinguish between shielding against the risk of human contact with the power-down unit and shielding against the risk of parts flying from the unit. Leistra sustained his injuries, not from contact with the moving power-down chain, but rather from being hit by a part of the chain when it broke.

The record is devoid of any evidence indicating that Bucyrus-Erie, in failing to provide a shield, created a risk of the power-down chain breaking, flying and hitting a workman. The plaintiff produced evidence that industry standards require the shielding of sprockets, drums and chains, as well as other moving parts of equipment. The basic purpose of machine guarding, according to the evidence, is to prevent injuries from the following sources: (1) direct contact with moving parts; (2) work in process; (3) mechanical failure; (4) electrical failure; and (5) human failure. Plaintiff's expert witness, a safety consultant, only briefly commented upon mechanical failure, as follows:

> The next one is to guard against mechanical failure. Breaks. If it flies out, it is contained. It doesn't fly. A grinding wheel that breaks, a belt that breaks, it isn't allowed to fly out and strike people in the proximity or send fragments out like missiles.

While the expert opined generally that the crane in question did not comply with the standards of the industry since the power-down unit was "not guarded for contact \* \* \* [or] from parts flying from it," he made no comment on the location of the power-down unit within the recessed compartment, the chain's strength, or the risk of it flying out of the compartment and striking a workman.

We note the following other evidence: (1) the power-down chain was designed to handle three times the normal operating load; (2) a basic rule of safety, here taught by plaintiff's employer, is that no repairs, adjustments or lubrication should be made while a machine is in operation; and (3) the power-down chain and sprocket were located in a recessed compartment. On the basis of this evidence, we conclude that the resulting harm to Leistra was not within any recognizable risk created by the manufacturer.[1]

---

1. Assuming, *arguendo*, that defendant's failure to shield could be said to have created an unreasonable risk of injury from flying parts to a person working

Even if it were, however, the undisputed facts establish that other human conduct intervened to insulate the defendant from liability. Although we find no Nebraska case factually similar to this one, Nebraska courts have frequently held that an independent intervening force severs the chain of causation flowing from the original tortfeasor. *E. g.*, Lock v. Packard Flying Service, Inc., 185 Neb. 71, 173 N.W.2d 516 (1970) (pilot's failure to inspect and discover a missing rudder on an airplane insulated the party responsible for removal of the rudder from liability to the injured party); Jarosh v. Van Meter, 171 Neb. 61, 105 N.W.2d 531 (1960) (driver who double-parked his truck on a street in violation of the law was not responsible for injuries to a pedestrian struck by an automobile passing the parked truck); Shupe v. Antelope County, 157 Neb. 374, 59 N.W.2d 710 (1953) (a heavy equipment operator who caused a partial collapse of a highway bridge was not responsible for a subsequent accident after township officials, having notice of the obstruction, failed to erect appropriate warning signs); Wax v. Cooperative Refinery Ass'n, 154 Neb. 42, 46 N.W.2d 769 (1951) (a nonfireman's attempt to save life and property from destruction by a fire relieved the person who negligently started the fire from liability for the former's death).

These cases speak in terms of the defendant creating a passive condition which is operated upon by another active moving force, a concept not readily adaptable to a products liability case against a manufacturer since the latter's conduct almost always requires activation by another force to produce an injury. We deem the real question to be whether "the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes." Prosser, Law of Torts 286 (3d ed. 1964).[2] See Morse v. Gray, 166 Neb. 557, 89 N.W.2d 842 (1958).

about the machine, the evidence in this case fails to show that the absence of a shield operated as a contributing factor to plaintiff's injuries. Ordinarily, a workman attempting repairs to a machinery unit housed under or behind a protective cover or screen must first remove the covering. Plaintiff produced no evidence tending to demonstrate that an appropriate shield would have permitted him to work on the power-down unit with the shield in place. Without such proof, the failure to equip the crane with a shield is not the cause in fact of the injury. See Restatement of Torts 2d, § 432(1); 2 Harper & James, The Law of Torts, 1114, n. 18 (1956); Prosser, Law of Torts 242 (3d ed. 1964).

2. Professor Prosser aptly comments upon the cause and condition dichotomy, as follows:

"Many courts have sought to distinguish between the active 'cause' of the harm and the existing 'conditions' upon which that cause operated. If the defendant has created only a passive, static condition which made the damage possible, he is said not to be liable. But so far as the fact of causation is concerned, in the sense of necessary antecedents which have played an important part in producing the result, it is quite impossible to distinguish between active forces and passive situations, particularly since, as is invariably the case, the latter are the result of other active forces which have gone before. If the defendant spills gasoline about the premises, he creates a 'condition;' but his act may be culpable because of the danger of fire. When a spark ignites the gasoline, the condition has done quite as much to bring about the fire as the spark; and since that is the very risk which the defendant has created, he will not escape responsibility. Even the lapse of a considerable time during which the 'condition' remains static will not necessarily affect liability; one who digs a trench in the highway may still be liable to another who falls into it a month afterward. 'Cause' and 'condition' still find occasional mention in the decisions; but the distinction is now almost entirely discredited. So far as it has any validity at all, it must refer to the type of case where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. But even in such cases, it is not the distinction between 'cause' and 'condition' which is important, but the nature of the risk and the character of the intervening cause." (footnotes omitted)

As mentioned above, the absence of the rope-guard may have permitted the entanglement of the steel cable with the power-down chain, forcing the chain out of its normal position. But, once the crane had become disabled, the absence of a shield over the power-down unit did not pose a hazard to the workmen. The power-down chain broke and hit plaintiff as a result of the following: (1) plaintiff applying a force by his prying action, further stressing the chain; and (2) the crane operator's movement of the drum back and forth, producing the necessary additional force to break the chain. We think these events must be characterized as superseding the failure of Bucyrus-Erie to place a shield over the particular drum and chain unit. We, therefore, hold that any negligence on the part of Bucyrus-Erie in failing to shield was not the legal cause of plaintiff's injuries.[3]

Appellant, in support of his position, relies heavily upon comments made by this court in Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968). We find this reference inapposite both factually and legally. *Larsen* enunciated the duty of an automobile manufacturer to anticipate an event likely to occur, the colliding of an automobile. No such similar element appears in the facts of this case.

We find no proper basis to support the verdict for the plaintiff. Accordingly, we affirm.

LAY, Circuit Judge, (dissenting).

I respectfully submit that the majority opinion misapplies Nebraska law. In Rose v. Buffalo Air Service, 170 Neb. 806, 104 N.W.2d 431, 444 (1960), the Nebraska Supreme Court announced the rule to be followed in Nebraska relating to a manufacturer's liability for a defective product:

" ' A vendor and the manufacturer or supplier of a chattel who know or have reason to know that it is likely to be dangerous when used and which is purchased as safe for use in good faith reliance upon their professions or representations of safety, competence, and care, are subject to liability to the purchaser or to others whom they should expect to share in or be in the vicinity of its use, for damages proximately caused by their failure to exercise reasonable competence and care to supply the chattel in a condition safe for use.' "

The trial court correctly instructed the jury on proximate cause under Nebraska law as follows:

" 'Proximate Cause'—An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case, that the act or omission played a substantial part in bringing about the injury or damage; and that the injury or damage was either a direct result or a natural or probable consequence of the act or omission.

"This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, of the conduct of only one person. On the contrary, many factors, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause."

---

3. Section 440 of the Restatement of Torts, Second, states:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

Comment b of that section explains:

"A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm."

\* \* \*.

"It is not necessary that the defendant might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm or the manner in which it occurred, but it is only necessary that he should have anticipated that some injury or harm might result from his conduct."

The majority opinion now holds that the actions of the plaintiff in attempting to pry the cable loose and the operator in rotating the drum constituted a superseding cause. Thus, although this case was submitted to the jury under general definitions of proximate cause, we sustain the judgment n. o. v. by applying different principles of causation. The defendant did not try its case on the theory of an intervening or superseding cause. Defendant's motion for directed verdict did not even raise this issue. No jury instruction on this issue was requested by the defendant and no such instruction was given.

The majority opinion borrows a principle of causation from Nebraska cases which are not related to the facts before us. I have difficulty seeing a parallel with the instant facts and a plaintiff knowingly entering a dangerous fire,[1] an automobile being double parked,[2] a plaintiff striking a collapsed bridge which a governmental body failed to protect,[3] or a pilot flying a rudderless plane.[4] In each of these cases the Nebraska Supreme Court found that the alleged negligence of the original tort-feasor had *come to rest* and was not a *substantial factor* in the cause of the accident. This is not true here. In the instant case, if the manufacturer's negligence had not still been contributive, that is, *had it placed* the protective shield around the drum containing the chain, plaintiff would not have been injured when the operator rotated the drum resulting in the chain flying loose. On the facts presented a jury could reasonably determine that the action of the operator in rotating the drum *acted on* and *in conjunction with* the absence of the shield. Apropos here is the Nebraska law overlooked by the majority reasoning:

" 'The doer of an original wrongful act that should reasonably cause one to anticipate an injury therefrom is not relieved from liability for an injury immediately brought about by an intervening cause, wrongful or otherwise, that is set into operation by such original wrongful act, *and that alone would not have caused the injury, but which with the aid of the original wrong does cause such injury.'* See, also, Tralle v. Hartman Furniture & Carpet Co., 116 Neb. 418, 217 N.W. 952; McClelland v. Interstate Transit Lines, supra, [142 Neb. 439, 6 N.W.2d 384]." Morse v. Gray, 166 Neb. 557, 89 N.W.2d 842, 847 (1958). (My emphasis.)

The facts of Morse v. Gray, supra, are more closely akin than the cases discussed by the majority. In that case, a wife brought suit against the proprietor of a drive-in ice cream stand for injuries sustained when the car she was riding in, driven by her husband, ran into a post 24 to 34 inches in height. The post, which was set out in the open, adjacent to the building, was dark colored; the husband failed to see it as he was driving out of the parking lot. In discussing liability for a negligent act, the Nebraska court quoted with approval from Meyer v. Milwaukee, E. R. & L. Co., 116 Wis. 336, 93 N.W. 6 (1903):

" 'It suffices to charge a person with liability for a negligent act if some injury to another ought reasonably to have been foreseen as the probable result thereof by the ordinarily intelligent and prudent person under the same circumstances, even though the

1. Wax v. Co-operative Refinery Ass'n, 154 Neb. 42, 46 N.W.2d 769 (1951).

2. Jarosh v. Van Meter, 171 Neb. 61, 105 N.W.2d 531 (1960).

3. Shupe v. Antelope County, 157 Neb. 374, 59 N.W.2d 710 (1953).

4. Lock v. Packard Flying Service, Inc., 185 Neb. 71, 173 N.W.2d 516 (1970).

specific injury might not be so foreseeable.'" 89 N.W.2d at 847–848. Shearman & Redfield on Negligence (Rev. ed.) §§ 37 and 38, p. 101, states the rules as follows:

"If the force which causes the injury is put in operation or motion by what is the negligence of the defendant, and that force or motion is still in progress or operation and has not lost its identity and continuity as such when the injury occurs, then the negligence which puts the injurious force in operation is the proximate cause.

\* \* \*

"In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, *without his negligence contributing thereto in the slightest degree,* produces the injury." (My emphasis.)

To hold that the negligence of the manufacturer, to-wit, the failure to safely guard the chain and drum, has

come to rest, totally misconceives the events that took place. The majority's statement that the plaintiff confuses the manufacturer's duty to place a shield to guard against snagging one's clothing or hands with a duty to guard against flying parts escapes me. The industry safety standards anticipate both protections.

The majority opinion stresses that the breakdown of the machine interrupts the natural and probable sequence of events because the manufacturer could not reasonably anticipate the malfunction and the events which followed. To so hold as a matter of law ignores the favorable evidential inferences to which a verdict holder is entitled. Under the evidence, the jury could consider that: (1) the defendant knew or should have known that the cable could jump the flange and wedge against the chain, with or without a rope guard; (2) the defendant could anticipate such a malfunction, since the defendant knew the rope guard is often discarded once the crane is put in actual use; [5] (3) the defendant's own testimony reveals that once the malfunction occurs the flange could not be removed

---

5. "Q. This rope guard that we mentioned which, of course, is not shown in that picture there, is that a removable rope guard?
"A. Yes, sir.
 \*   \*   \*   \*   \*
"Q. These maintenance men sometimes remove it when they remove the cable?
"A. Yes, they do. When they replace the cable. You will find that they have the socket down here so they can get in their and shove it in. The flange here is about this wide.
"Q. You are indicating now about four or five inches?
"A. About four or five inches, yes.
"Q. On that particular chain?
"A. On this one here. Then your flanges on your guard is about the same distance. It kind of interferes with your fingers in trying to put this bolt in there, *so they normally remove it. It is easier for them to work on it.*
"Q. Do they sometimes forget to put it back?
"A. *I am afraid most of the time they throw it away.*
"Q. Is there something else that you wanted to add?

"A. If the machine is properly operated, there is no need for that guard.
 \*   \*   \*   \*   \*
"Q. The purpose of the guard is what?
"A. The purpose of the guard is that if you drop a load, the load stops—
 \*   \*   \*   \*   \*
"A. You have a load on that hoist line and you drop it, the operator doesn't catch it immediately on the brake to keep that line tight, like on a fishing reel, so the cable will drop down to the floor, and all that guard does is keep that cable from going sideways."
 \*   \*   \*   \*   \*
"Q. I think you have stated that when you were standing down there by Exhibit 2, that if this machine was operated properly, you don't need that guard. What guard were you talking about?
"A. We were talking about that little half moon guard.
"Q. The rope guard?
"A. Yes, on the bottom that is connected to the floor. I would say you don't need it. It should be there, and we put it there, *but many people operate it without it."* (My emphasis.)

without unwinding the full cable drum, an impossibility here because the cable was wedged tight against the chain and the drum would not turn; (4) loosening the master link of the chain would not serve to release the chain where the chain was otherwise wedged and taut by reason of the cable; (5) alternative methods to loosen the chain, according to the testimony of defendant's own engineer, would be to *rotate the drum, pry the chain loose,* or use a torch to cut the chain; (6) the breaking of a taut chain would be hazardous to people in the vicinity; (7) according to plaintiff's expert, there existed an industry-wide practice *to shield or guard the drum containing the chain in order to protect those in the vicinity from flying parts;* (8) plaintiff's expert gave an opinion that the unshielded chain on the first drum was *in violation of safety codes and the industry-wide practice.*

A manufacturer has the duty to reasonably anticipate harm that may arise from a foreseeable emergency. This is particularly true where the evidence demonstrates the manufacturer's awareness of such potential emergencies. Judge Gibson, speaking for this court in Larsen v. General Motors Corp., 391 F. 2d 495, 501 (8 Cir. 1968), said:

> "Generally, as noted in 76 A.L.R.2d 93, Anno: Products Liability—Duty As To Design, the manufacturer has a duty to use reasonable care under the circumstances in the design of a product but is not an insurer that his product is incapable of producing injury, and this duty of design is met when the article is safe for its intended use and when it will fairly meet any 'emergency of use' which is foreseeable. [Citation omitted] *This doctrine has even been extended to cover an unintended use where the injury resulting from that unintended use was foreseeable or should have been anticipated."* (My emphasis.)

See also Ford Motor Co. v. Zahn, 265 F. 2d 729, 733 (8 Cir. 1959).

We are all agreed that failure of a plaintiff to fully appreciate the risk of attempting to loosen the chain and cable was clearly an issue of fact for the jury under Nebraska comparative negligence law. Cf. Western Contracting Corp. v. Odle, 331 F.2d 38 (8 Cir. 1964); Surface v. Safeway Stores, Inc., 169 F.2d 937 (8 Cir. 1948); Hickman v. Parks Construction Co., 162 Neb. 461, 76 N.W. 2d 403 (1956); Rumsey v. Schollman Bros. Co., 156 Neb. 251, 55 N.W.2d 668 (1952).

We are also agreed that the plaintiff produced sufficient evidence of negligence, to-wit, the failure to properly guard a hazardous area. This was disputed, but the jury resolved the conflicting facts in favor of the plaintiff. In interpreting Nebraska law, Judge Van Oosterhout wrote for this court in Chicago, B. & Q. R. R. v. Beninger, 373 F. 2d 854, 858 (8 Cir. 1967):

> "An accident may be proximately caused by separate and distinct acts of negligence of different parties which concur in producing the accident. *Where negligence is established, the issue of probable cause is usually one of fact for the jury."* (My emphasis.)

I submit that the evidence here was sufficient to take the issue of proximate cause to the jury. A jury is much better equipped to offer a composite expertise to resolve issues which bear on what is a foreseeable harm and on what is a natural and probable consequence of an act or omission. Jurors bring with them community standards and understandings to resolve issues of fact in areas where judges should hesitate to pronounce doctrine. Mr. Justice Hunt observed years ago:

"It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." Railroad Co. v. Stout, 84 U.S. 657, 664, 21 L.Ed. 745 (1873).

A judge's role should be confined to viewing the record to ascertain whether there exists sufficient evidence to sustain a verdict. Simply because we might

personally disagree as to what inferences may be taken from the evidence, we are not justified in setting aside a jury verdict which finds to the contrary. In Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), the Supreme Court admonished:

> "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

I adhere to that principle. I would affirm the verdict of the jury below.